[L. A. No. 565. Department Two.—October 28, 1899.]

# VINELAND IRRIGATION DISTRICT, Appellant, v. AZUSA IRRIGATING COMPANY et al., Respondents.

WATER RIGHTS — APPROPRIATION—SUBSURFACE FLOW — SUBJECTION TO SUPERIOR RIGHTS.—The subsurface flow of streams in this state may be appropriated for useful purposes by proper means for the development and user thereof, with due regard to the prior rights of others in the stream. Such appropriation is legal only in so far as it does not imperil or impair the superior rights of others in the surface flow or in the subsurface flow of the stream.

ID.—NOTICE OF APPROPRIATION OF SUBSURFACE FLOW—PROPER PROSECUTION OF WORK—PRIORITY OF RIGHT.—An appropriation of a specified quantity of the subsurface flow of a stream may be made by a valid notice of appropriation thereof, followed by a proper prosecution of the work for the development and actual appropriation of that quantity; and such appropriation will take precedence of an intervening actual appropriation of the subsurface flow made by a subsequent appropriator prior to the completion of the work.

ID.—COMBINATION OF SUPERIOR RIGHTS—SEPARATION AS TO SUBSEQUENT APPROPRIATOR—CHANGE OF PLACE OF DIVERSION.—The rights of persons first appropriating all the surface flow of a stream cannot be changed or altered by compromise and combination with the rights of a first appropriator of five thousand inches of the subsurface flow, as against a subsequent appropriator of the subsurface flow. Each appropriation must rest upon its own merits, so far as respects the right to change the place of diversion of the surface flow and subsurface flow to the detriment of the subsequent appropriator.

ID.—RIGHTS OF APPROPRIATORS OF SURFACE FLOW—INJURIOUS DIVERSION OF SUBSURFACE FLOW—INJUNCTION.—If a subsequent appropriation of subsurface flow does not impair the rights originally acquired by prior appropriators of all the surface flow of the stream, they cannot change their place of diversion to the injury of the subsequent appropriator. But, if it appears that the subsurface flow is necessary to protect and support the surface flow, and that any diversion thereof weakens and injures the bed of the stream and diverts the surface flow, the prior appropriators are entitled to an injunction to restrain the subsequent appropriator from taking the subsurface flow; and it cannot be material to him at what place the surface flow may in the future be diverted.

ID.—RIGHTS OF FIRST APPROPRIATOR OF SUBSURFACE FLOW.—One who has first made a valid appropriation of five thousand inches of the subsurface flow of a stream is entitled to change his place of diversion of that quantity of water to a point above the head

of the tunnel of a subsequent appropriator, and the subsequent appropriator cannot be heard to complain thereof.

ID.—CONSTRUCTION OF FINDINGS—SUBSURFACE FLOW—"PERCOLATING WATER."—Findings which clearly show that the lower flow of a stream is not an independent subterranean branch thereof, and which are intended to support an injunction granted to restrain the plaintiff from injuriously diverting its waters by a tunnel extending into the "saturated mass" of gravel in the river bed, and which state that the water diverted "is the percolation from the surface stream, and is withdrawn from the surface stream which defendants had appropriated," that "the water from the surface flow of the stream percolates through this gravelly bed of the river," and that "this lower or percolating water is directly connected with the surface flow, and protects and supports, and is necessary for the protection and support of the surface flow," et cetera, are to be construed, not as referring to such "percolating water" as may be rightfully impounded by the owner of the soil, but as importing that plaintiff was withdrawing the waters of the stream from within its bed and channel, and from its subsurface flow.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The notice of appropriation of the Azusa Water and Development Company was posted at a point which became the mouth of a "development tunnel," and claimed "the water here flowing in the channel of the San Gabriel river to the extent of five thousand inches," et cetera, and stated that "the means by which it is intended to divert said water is by bedrock and surface dam, or both, tunnel, ditch, iron pipe, and flume, or any or other of such means as may be found most practicable," and stated the size of the tunnel, the size of the iron pipe, and the size of the flume, and how the bedrock and surface dam was to be constructed. Further facts are stated in the opinion of the court.

Works & Lee, for Appellant.

The notice of appropriation of the Azusa Water Company was void, in not defining on its face the place of the proposed diversion. The record could not impart notice of any place of diversion. (Civ. Code, sec. 1415.) The appropriation being without proper notice under the code, any surplus above the

actual appropriation made by Azusa Water Company was subject to actual appropriation by plaintiff. (*Naloma Water Co. v. Hancock*, 101 Cal. 42; *Edgar v. Stevenson*, 70 Cal. 286; *Modoc Land etc. Co. v. Booth*, 102 Cal. 151; *Faulkner v. Rondoni*, 104 Cal. 140; *McClellan v. Hurdle*, 3 Colo. App. 430; *Smith v. O'Hara*, 43 Cal. 371.) And the plaintiff having appropriated this surplus underground flow of water, the defendants, who had previously appropriated below, could not change their point of diversion, or otherwise cut off this surplus flow, as against the plaintiff's rights. (Civ. Code, secs. 1412, 1415; *McGuire v. Brown*, 106 Cal. 660, 665, 667; *Columbia Min. Co. v. Holter*, 1 Mont. 296; *Smith v. Corbit*, 116 Cal. 587; *Jacob v. Lorenz*, 98 Cal. 332; *Ramelli v. Irish*, 96 Cal. 214; *Junkans v. Bergin*, 67 Cal. 267; *Strickler v. Colorado Springs*, 16 Colo. 61; 25 Am. St. Rep. 245; *Fuller v. Swan River etc. Co.*, 12 Colo. 12.) The finding that the water appropriated by plaintiff was "percolating water" brings the case under the authorities, which are uniformly to the effect that percolating waters may be taken out of the lands where found, and that a lower proprietor injuriously affected cannot complain. (*Hanson v. McCue*, 42 Cal. 303; 10 Am. Rep. 299; *Cross v. Kitts*, 69 Cal. 217; 58 Am. Rep. 558; *Painter v. Pasadena etc. Co.*, 91 Cal. 74, 82; *Southern Pac. R. R. Co. v. Dufour*, 95 Cal. 615; *Gould v. Eaton*, 111 Cal. 639; 52 Am. St. Rep. 201.) The compromise agreement was improperly admitted in evidence. It could not affect the rights of the plaintiff. The findings are against the evidence, and there is an omission to find upon material issues.

Silent & Campbell, and Anderson & Anderson, for Respondents.

The plaintiff could not be injured by the cutting off of percolating water from its tunnel. (*Emporia v. Soden*, 25 Kan. 425 (588); 37 Am. Rep. 265; *Aetna Mills Co. v. Brookline*, 127 Mass. 69; *McClellan v. Hurdle*, 3 Colo. App. 430.) Plaintiff's appropriation was made upon private property, and not upon the public domain, and was not, therefore, valid as an appropriation. (Kinney on Irrigation, sec. 272; Pomeroy on Riparian Rights, sec. 15.) The notice of appropriation by the Azusa Water Company was sufficient, under section 1415 of the code.

Such notices are to be liberally construed. (Kinney on Irrigation, sec. 157; *Osgood v. Eldorado etc. Co.*, 56 Cal. 571.) The final completion of the work and all intermediate acts are by relation carried back to the date of the notice. (Civ. Code, sec. 418.) The findings are supported by the evidence, and the judgment is correct. The plaintiff had no right to interfere with the flow of the stream, or with the rights of any of the defendants.

HENSHAW, J.—Plaintiff sued as an appropriator of a part of the subterranean flow of the San Gabriel river to restrain the defendants, who are also appropriators of the waters of the same stream, from changing their place and manner of diversion to the plaintiff's injury. The defendants, who are very numerous, made answer, and, without particularizing their pleadings, it will be sufficient, speaking of them collectively, to say that they asserted a right to all of the waters of the stream prior and superior to that of plaintiff, both as appropriators and as owners of riparian lands. By cross-complaint they sought also to restrain plaintiff from further taking the waters of the river, upon the ground that it materially interfered with their own prior and superior rights thereto.

The following facts are necessary to an understanding of the litigation: The San Gabriel river flows through the San Gabriel canyon over government land, whence it passes out into San Gabriel valley. The channel of the river is well defined, both in the canyon and after it passes into the valley. In the canyon the stream is tortuous and of varying width, in places narrow, in others broadening out into flats and bars. The rocky walls of the canyon are the natural banks of the stream. The space between these rocky walls is filled with a loose formation of sand, gravel and bowlders. This forms the bed of the stream. In the summer season, the channel is changeable along and across this gravel bed, moving from one side of the canyon to the other. In places, the waters of the stream divide, forming small islands. The gravelly bed of the stream is of varying depth, being shallow where the canyon narrows and deeper in its broader parts. The water from the surface flow of the stream saturates this gravelly bed at times and in places from canyon wall to canyon wall. This water saturating the gravelly

bed is a part of the waters of the San Gabriel river, flowing in its channel between its natural banks in contact with the surface flow, and forms the subsurface flow of the river. It is found by the court that this subsurface flow protects and supports, and is necessary for the protection and support of the surface flow.

At a time prior to the acquisition by plaintiff of any of its asserted rights, it is admitted that the defendants, other than the defendant the Azusa Water Development and Irrigation Company, had appropriated all of the waters constituting the surface flow of the river, diverting them at a point below plaintiff's point of later diversion. These defendants actually took the surface waters of the stream, and no others.

Owing to the nature and character of the bed of the stream, it appears, as it would be natural to expect, that a large volume of water is carried by the subsurface flow. It is possible and practicable to impound this water and make it available for useful purposes, in some instances by a dam called a bedrock dam which is built from the natural country rock up and through the gravelly bed to and above the surface. Such a dam, as a matter of course, if extended across the bed of the stream, arrests and impounds the subsurface flow. Another method of securing these subterranean waters is by tunneling. Under this system a tunnel is driven from a point below in a general direction up the stream through, under, and along this gravelly bed. The subsurface flow naturally drains into this tunnel, and is thus carried down to its mouth and there diverted.

Another of these defendants, the Azusa Water Development and Irrigation Company, still at a time prior to the acquisition by plaintiff of any of its rghts, posted at places upon the stream above the point of diversion of the other defendants its notices of intention to appropriate all of the unappropriated waters of the stream.

Under this notice the work actually done by this defendant was of the following character: Beginning at a point near the stream and above the point of diversion of the other defendants, it drove a tunnel such as has been described up the bed of the stream, and therein collected from the subsurface flow some hundred or more miners' inches of water, which, flowing

to the mouth of the tunnel, was there turned into the stream
and permitted to run with the surface flow to the point of diver-
sion of the other defendants, where the waters were segregated
and carried by their appropriate distributing systems to the con-
sumers. Difficulties, however, arose between this defendant
and the other defendants in this action, and litigation followed.
In the end a so-called compromise agreement was entered into
between all of the defendants. By this their various claims
and contentions were settled and determined between them-
selves, and, as the court finds, "their rights were united and con-
solidated," and the water of the river to which they were en-
titled was divided and apportioned amongst them. There was
appointed a committee of nine which should thereafter, under
certain restrictions, have full charge of the further works of
development to be constructed.

The notice of appropriation of the defendant the Azusa
Water Development and Irrigation Company was posted upon
the twenty-seventh day of August, 1883, and, as the court finds,
it prosecuted its work of construction diligently and uninter-
ruptedly until the twenty-sixth day of January, 1889. Upon
this date the compromise agreement above mentioned was con-
summated, and, as the court still further finds, the committee
of nine immediately after took charge of the development tun-
nel of the Azusa Water Development and Irrigation Company,
and at once let contracts for continuing the work in the de-
velopment of the tunnel, and prosecuted the work diligently
and uninterruptedly until the completion thereof in 1896.
After the date of the compromise agreement the plaintiff was
organized as an irrigation district. In March, 1890, it com-
menced the construction of its tunnel, completing the work in
October, 1893. This tunnel began upon the opposite side of
the river from the tunnels of defendants, upon the lands in
the private ownership of the plaintiff, and was driven toward
and into the gravelly bed of the river. By this tunnel, as by
the tunnel of the Azusa Water Development and Irrigation
Company, the subterranean flow of the stream was gathered and
diverted to the amount of about sixty miners' inches of water.
The place where the tunnel entered the river bed, from which
the major portion of its waters was gathered, was above the

point where the defendants for years past and at that time were diverting the surface flow, and at a point below where the defendant the Azusa Water Development and Irrigation Company turned into the stream the subsurface waters developed by its tunnels.   Plaintiff continued for several years to draw from its tunnel an amount of water varying with the amount carried by the surface flow of the stream, while, upon the other hand, the committee of nine acting under the compromise agreement and the notice of appropriation by the defendant Azusa Water Development and Irrigation Company continued work upon the latter's tunnel, driving it still further up the stream, constructing galleries, and finally sinking shafts from the surface to the tunnel to catch and drain all the surface flow.   They designed thus to collect all of the surface flow at a point several thousand feet above the mouth of the tunnel, and all the subterranean flow which could there be gathered, and to carry it all through their tunnel, but they proposed no longer to turn these waters into the natural bed of the stream, thus to flow past the head of plaintiff's tunnel, as had formerly been done, but to divert them at the mouth of their own tunnel.   The effect of this would be, and was, that the surface flow of the stream ceased, and with its cessation the water no longer entered plaintiff's tunnel, and it dried up.   Plaintiff then commenced this action. It asserted that the San Gabriel river, a short distance above its place of diversion, divided into two streams with well-defined channels, the one a surface stream, the other a subterranean stream from which it drew its water; that it was an appropriator of the waters of this subterranean stream, and that the effect of the change in the place and manner of defendants' diversion was to send this stream dry.   The court found against plaintiff's allegations of a separate and well-defined subterranean stream, but this finding, in view of the others which it actually did make, it is unnecessary to consider further than to say that it draws support from the evidence.

From the foregoing it is apparent that plaintiff's cause of action rests upon its asserted right as a subsequent appropriator of the waters of the stream, and the consequent injury to its rights following the change by the defendants of their place of diversion.   Defendants, by cross-complaint, themselves

averred that plaintiff was taking the waters of the river, to which extent, then, it was an appropriator, but they insisted that this taking was in violation of and injurious to their earlier rights. Plaintiff complains, and with some justice, that upon this important question as to whether or not it was an appropriator of the waters of the stream, the court has failed to find. The findings are somewhat discursive. They are not limited to declarations upon the ultimate facts in issue, but contain many probative facts, and leave something too much to inference and deduction.

When it is considered if from these findings it can be determined whether the court did or did not hold the plaintiff to be an appropriator, some difficulty will be experienced. The court finds that years before the plaintiff corporation came into existence the defendants had appropriated "all of the water of said river flowing in the natural bed thereof." The correctness of this finding must be conceded only if it be held to apply to the surface flow, for these defendants, other than the Azusa Water Development and Irrigation Company, had made no appropriation of the subsurface flow. It is found that the separate and independent subterranean branch of the stream, from which plaintiff insisted that it was drawing its water, did not in fact exist, but that the water which entered plaintiff's tunnel "is the percolation from the surface stream, and is withdrawn from the surface stream which defendants had appropriated prior to the organization of plaintiff as an irrigation district." Again, it is found that "the water from the surface flow of the stream percolates through this gravelly bed of the river and fills the voids until in portions of the canyon the whole bed becomes saturated from wall to wall. This lower or percolating water is directly connected with the surface flow, and protects and supports, and is necessary for the protection and support of, the surface flow in its course in the natural bed of the stream." Also, the court finds that the plaintiff's tunnel is constructed into the gravelly bed of the stream, through which water from the surface can and does percolate; that it is constructed into the "saturated mass" of gravel in the river bed. Still further, that the plaintiff's tunnel creates an artificial draft upon the surface flow of the stream,

and draws down a part of the same, and weakens and injures the natural bed of the stream, and tends to interrupt and carry away from defendants the surface flow, and deprive defendants thereof.

These findings are unhappy in using the phrase "percolating waters," a phrase of well-defined meaning within the law, in a manner apparently not justified by the facts. Percolating waters are a part of the soil, and belong to the owner of the soil. He may impound them at will, and the proprietor of lower lands injuriously affected cannot be heard to complain. (*Hanson v. McCue*, 42 Cal. 303; 10 Am. Rep. 299; *Cross v. Kitts*, 69 Cal. 217; 58 Am. Rep. 558; *Painter v. Pasadena Land etc. Co.*, 91 Cal. 74.) It is essential to the nature of percolating waters that they do not form part of the body or flow, surface or subterranean, of any stream. They may either be rain waters which are slowly infiltrating through the soil, or they may be waters seeping through the banks or bed of a stream which have so far left the bed and the other waters as to have lost their character as part of the flow. If these waters which the court describes were in fact percolating waters, then plaintiff had the unquestioned right to take them by its tunnel, and, even if injury resulted to other appropriators or riparian owners upon the stream, they could not be heard to complain. Yet the court grants these defendants an injunction against plaintiff to restrain it from taking such waters. The findings, therefore, must be construed—and they are fairly susceptible of this construction—to mean that plaintiff was drawing its waters from within the bed and channel of the stream and from its subsurface flow. That one may be a lawful appropriator of such waters there can be no question. To hold otherwise would be to deprive vast tracts of arid land of waters thus obtained and now beneficially used and employed upon them, and limit the legal taking of waters to the surface flow alone. The existence of a well-defined subsurface flow within the bed and banks of streams such as this is well recognized. Says Kinney (Kinney on Irrigation, sec. 44): "At certain periods of the year water flows on the surface in a well-defined course, and there is at all times what is known as the underflow. This is the broad and deep subterranean volume of water which slowly flows

through the sand and gravel underlying the most, if not all, the streams which traverse the country adjacent to the mountain systems of the arid region. These underground streams are probably much greater in volume in some cases than the water upon the surface, and are, as far as rights of appropriation or riparian rights are concerned, but a valuable portion of the well-defined surface stream." Indeed, illustration of the fact that the trial court itself must of necessity have considered that the taking of subterranean waters from the stream by means such as those employed by plaintiff was a legitimate mode of appropriation is furnished by the finding that the defendant the Azusa Water Development and Irrigation Company gave notice of appropriation as required by the code, and proceeded by its tunnel to develop and secure this underflow in manner precisely that employed by plaintiff, and the court distinctly finds that it was a legal appropriator of waters from this same stream.

We therefore hold it to be the law, and we think it to be a moderate and just exposition thereof, that one may, by appropriate works, develop and secure to useful purposes the sub-surface flow of our streams, and become, with due regard to the rights of others in the stream, a legal appropriator of waters by so doing. That plaintiff thus was at the time of the institution of its action an appropriator permits of no doubt, but its appropriation was legal only so far as its taking did not imperil or impair the rights of others superior to its own. One may not, of course, tunnel into the bed of such a stream, or dam its underground flow, and by such means draw away either subterranean or surface waters the rightful use to which has been secured by others. If, upon the other hand, one can, by development, obtain subterranean waters without injury to the superior rights of others, clearly he should be permitted to do so.

This having been said, the legal rights of the respective parties to this controversy are not difficult of definition. As against this plaintiff, the compromise agreement could not give these defendants collectively any greater rights than before they had separately enjoyed. So far as concerns those defendants who had appropriated all of the surface flow, and were diverting

it at a point below the intake of plaintiff's tunnel, plaintiff, as a subsequent appropriator, had the clear right to insist that their place of diversion should not be changed to his injury. If the surface flow which had been permitted to pass the head of his tunnel fed the subterranean flow, and if the waters which the plaintiff thus took could be and were taken without impairment of the rights of the defendants to the surface flow, then plaintiff is justified in insisting that the surface flow should continue to pass the head of his tunnel and feed the underflow. If, upon the other hand, the taking of this water by plaintiff, as the court finds, creates an artificial draft upon the surface flow of the stream, draws down a part of it, and weakens and injures the natural bed of the stream, and tends to interrupt and carry away from the defendants the surface flow, and to deprive them of it, since plaintiff's use of the water has not ripened into a prescriptive right, defendants are entitled to an injunction to restrain this illegal interference. Again, as the Azusa Water Development and Irrigation District is an appropriator prior in time and right to the plaintiff, if its notice of appropriation be valid, as the court finds, and if its work has been properly prosecuted, it would have the unquestioned right to develop and take the subsurface flow to the extent of five thousand miners' inches, and to divert the water at a point above the head of plaintiff's tunnel, and of this plaintiff could not be heard to complain. But in the fact that this defendant had compromised its differences and consolidated its rights with the other defendants will be found no legal justification for the diversion at a point above of all of the surface flow which had been accustomed to pass beyond plaintiff's point of diversion. The appropriators of this surface flow, as has been said, would not be warranted in so changing the place of diversion, and the mere fact that they had consolidated their rights with one who claimed the right to develop a subterranean flow in subordination to their rights would not justify the ignoring of the intervening rights of the plaintiff.

But into an examination of all these questions, as affected by the evidence in the case, it will not be necessary to enter; for, as has been said, the court, at the instance of the defendants under their cross-complaint, granted an injunction against

the plaintiff restraining it from asserting any right to the waters which it had been taking, and further restraining it from developing or extending its tunnel. This injunction was based upon the findings above adverted to that the water which plaintiff was taking was drawn from and decreased the surface flow of defendants, and that the tunnel weakened the natural bank and bed of the stream, and created an artificial draft upon the surface waters, causing them to flow more freely into the tunnel, and thus lessening the amount which the defendants otherwise would have received. These findings, if supported, are determinative of the case, for, if plaintiff's attempted appropriation is so violative of the superior rights of the defendant appropriators as to justify an injunction restraining it from asserting any right to the water, it cannot matter to plaintiff what place the defendants may, in the future, select as their point of diversion. It would unduly extend this opinion to set forth the evidence at length, but we are satisfied that the findings are abundantly supported by the evidence of the engineers Wright, Purnell, and Koebig, who testified with unanimity to the matters found by the court. The right of the defendants to an injunction under the facts found is very clear, but, if it needs support, it may be found in the well-considered cases of *Peoria v. Suden*, 25 Kan. 588, *Aetna Mills v. Brookline*, 127 Mass. 69, and *McClellen v. Hurdle*, 3 Colo. App. 430.

The judgment and order appealed from are therefore affirmed.

Temple, J., and Harrison, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.