[L. A. No. 2039.   In Bank.—March 5, 1909.]

ARROYO DITCH AND WATER COMPANY (a Corporation), Respondent, v. E. J. BALDWIN, Defendant and Appellant; SAN ANTONIO IRRIGATING DITCH COMPANY (a Corporation), et al., Defendants and Respondents; ANDREW CURTIN et al., Interveners and Respondents.

APPEAL FROM ORDER DENYING NEW TRIAL—QUESTIONS NOT REVIEWABLE.—On an appeal from an order denying a new trial, the questions whether the complaint is sufficient to support the judgment or whether the court erred in overruling the demurrer to the complaint, or whether or not the judgment is supported by the findings, cannot be considered.

WATER-RIGHTS—SOURCE OF STREAM—SUBTERRANEAN CHANNEL—EVIDENCE—FINDINGS.—Where the evidence is conflicting as to the location of the source of a natural stream, and the court finds on conflicting evidence that it did not flow in a well-defined subterranean channel above the point determined to be its source, such findings cannot be disturbed on appeal.

ID.—SUBTERRANEAN WATER PRESUMED TO BE PERCOLATING.—Subterranean water is presumed to be percolating, and one who claims rights in it as a flowing stream has the burden of showing its existence.

ID.—PRESCRIPTIVE RIGHT AGAINST RIPARIAN OWNER.—The right to take water from a stream, as against riparian owners, may be acquired by prescription.

ACTION TO ESTABLISH WATER-RIGHTS—INJUNCTION AGAINST UNLAWFUL DIVERSION—CORPORATION AS AGENT OF INDIVIDUAL STOCKHOLDERS.—A corporation organized for the purpose of distributing to its stockholders the waters of a certain stream, to which they each either had riparian rights or had acquired a right by prescription, may maintain an action against an upper riparian proprietor to establish such rights, and to enjoin him from using more than his share of the water. In such action, it is immaterial to the defendant whether the rights sought to be enforced were enforced by the individual owners separately, or through a corporation representing them, either as their agent and trustee, or as the possessor of their former titles.

ID.—EXTENT OF USE BY UPPER PROPRIETOR—DIVERSION BY LOWER PROPRIETORS.—An upper riparian owner is limited in his right to the use of water upon his riparian land within the watershed of the stream. He may take his proper proportion of the water, but must return the surplus to the channel of the stream at the lower boundary line of his land. After having used his legitimate part of the water, he cannot object to its diversion to any beneficial use by the lower riparian owners or appropriators or their successors in interest, even if some of the water taken by them is carried beyond the watershed.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Works, Lee & Works, for Appellant.

J. H. Ardis, and Kendrick & Knott, for Respondent Arroyo Ditch and Water Company.

J. S. Chapman, Chapman & Chapman, J. L. Fleming, and A. J. King, for certain Defendants and Respondents.

Anderson & Anderson, for Intervener and Respondent Andrew Curtin.

Burrel D. Neighbours, for Intervener and Respondent Elizabeth Neighbours.

MELVIN, J.—This case comes up on an appeal from the order denying defendant Baldwin's motion for a new trial, the appeal from the judgment having been heretofore dismissed. The action was brought by the Arroyo Ditch and Water Company (a corporation), to quiet in itself and in the defendants other than E. J. Baldwin, as against said Baldwin, the title to the waters of the Old San Gabriel River and to all the water which in its natural course flows in said river above the point known as the Arroyo Ditch dam, except a certain proportion of said water which was conceded to belong to Baldwin. Plaintiff also prayed that the said Baldwin be enjoined from using more than his alleged share of said water. Certain interveners appeared and judgment was finally rendered substantially as prayed for in the amended complaint of the Arroyo Ditch and Water Company.

This appeal being only from the order denying the motion for a new trial and not from the judgment, the questions whether the complaint is sufficient to support the judgment or whether the court erred in overruling the demurrer to the complaint cannot be considered. (*Holmes* v. *Warren*, 145 Cal. 459, [78 Pac. 954]; *Coburn* v. *California Portland Cement Co.*, 144 Cal. 81, [77 Pac. 771].) Neither can we pass upon the question whether or not the judgment is supported by the findings. (*Simon Newman Co.* v. *Lassing*, 141 Cal. 175, [74 Pac. 761].)

The superior court finds, among other things, that the Old San Gabriel River (sometimes called for a part of its course Rio Hondo) rises in the Rancho Potrero Grande, south of and near the north line of said rancho; that plaintiff and defendants other than E. J. Baldwin obtained water from the stream by joint diversion at the Arroyo Ditch dam; that below said dam are 47,320 acres of land within the ranchos Paso de

Bartolo, Santa Gertrudes, Los Cerritos, San Antonio and San Pedro which require for irrigation all the water naturally flowing in the old San Gabriel River at the point designated, as the Arroyo Ditch dam; that said acreage requires 6760 inches of water under a four-inch pressure for its successful irrigation; that appellant is the owner of 5835.80 acres of land bordering on and within the watershed of said river included within the ranchos of Potrero Grande and La Merced; and that he also owns an undivided five-sixths interest in the Potrero Chico Rancho, containing one hundred and fifty acres and riparian to the river. It is also found that only a part of Baldwin's land is susceptible of irrigation; that some of it is damp and moist land requiring no irrigation; that some needs but slight irrigation; that wells upon Baldwin's land supply water in abundance for domestic use; and that 289 inches of water under four-inch pressure is essential for irrigation for the successful cultivation and production of crops on all the said land of the appellant which is susceptible of and requires irrigation.

Appellant's counsel vigorously assert that the court erred in finding that the Old San Gabriel River rises in the county of Los Angeles south of and near the boundary line of the Rancho Potrero Grande. They stoutly maintain that the evidence shows the river's source to be in the San Bernardino Mountains, and that it flows partly on the surface and partly by underground channel to the Pacific Ocean. In this behalf they cite *Vineland Irrigation Dist.* v. *Azusa Irrigation Co.*, 126 Cal. 486, [58 Pac. 1057], a case referring to the same river above appellant's lands, and holding that where there is a well-defined sub-surface flow within the bed and banks of a stream, the subterranean waters are to be regarded as but a valuable portion of the surface stream so far as riparian rights and privileges of appropriation are concerned. There is, it is true, a conflict of evidence with respect to the nature of the subterranean waters above the point at which, according to the findings, the river rises. Some of the witnesses were of the opinion that the water which came to the surface near the north boundary line of the Rancho Potrero Grande was but the reappearance of a well-defined stream that had flowed from the mountains partly upon the surface and partly underground. Others testified that there was no flow of water

above the Rancho Potrero Grande except in times of great flood when the San Gabriel River would break over its banks, spreading over the country, and would come down through the Lexington wash. For example, witness Lanterman testified that the water which rises to the surface in the Rancho Potrero Grande comes from the watershed and "percolates through the soil down to the place where the. water rises in the Rio Hondo." Witness George Brown, a well-driller, who had put down fifty-two wells in that vicinity, in territory measuring about one and three-fourths miles from east to west, testified that he did not strike bedrock in sinking any of these wells, and that from the time he found water the soil was saturated with it all the way down except in the strata of clay. Under the rule that this court will not disturb a finding based upon some evidence where there is a conflict of testimony, we must hold that the court below did not err in the determination that no well-defined subterranean channel existed. This position is strengthened when we consider the rule stated by Farnham:

"Subterranean water is presumed to be percolating, and therefore one who claims rights in a flowing stream has the burden of showing its existence." (Farnham on Water and Water-Rights, sec. 947.)

The articles of incorporation of the Arroyo Ditch and Water Company, which were in evidence, give the purposes for which it was formed in part as follows: "To take, appropriate and divert water from the Old San Gabriel River and other sources in Los Angeles County, state of California for irrigation and domestic purposes. . . . To sell and lease water-rights acquired by this corporation, to distribute water to its members and other persons in Los Angeles County for irrigation and domestic purposes, to acquire, buy, sell, and dispose of water-rights, privileges and interests in water-rights, flumes, ditches and canals for domestic and irrigation purposes; and generally to do any and all things that may be necessary to procure, have and furnish water to the inhabitants of Los Nietos and the adjoining townships in Los Angeles County, state of California, with water for domestic and irrigation purposes." Appellant contends, however, that the real purpose of the corporation was merely the distribution to its stockholders of the water to which each was entitled

before the formation of said corporation, and that this is shown by the contract between the landowners, existing before the articles of incorporation were filed, whereby the stock was to be issued to each owner in the proportion of one share for each acre of his land *theretofore irrigated from said ditch.* But whether the company owned the water in question or merely acted for the stockholders is immaterial. It was stipulated that the persons whose names appeared upon a certain map were owners of the various tracts of land marked with their respective names, and that for more than ten years prior to January 1, 1885, they and their predecessors in interest had diverted and used all the surface flow of the stream continuously and uninterruptedly and under claim of title as against all owners of the land below the point designated as the Arroyo Ditch dam. Appellant's counsel contend that such stipulation does not necessarily imply an *adverse* use. But when we consider the proof adduced elsewhere, that the Arroyo Ditch carried practically all of the water from the stream at the point where the dam was located, this contention fails. It is the settled law of this state that the right to take water from a stream, as against riparian owners, may be acquired by prescription. (*Gallaher* v. *Montecito Valley Water Co.,* 101 Cal. 245, [35 Pac. 770]; *Bathgate* v. *Irvine,* 126 Cal. 144, [77 Am. St. Rep. 158, 58 Pac. 442].) Plaintiff's incorporators having thus acquired such right, or having riparian rights themselves, it is immaterial to the defendant Baldwin, an upper riparian owner, whether the right was enforced by them separately or through a corporation representing them, either as their agent and trustee or as possessor of their former titles. The right of the plaintiff to sue was very clearly stated in the opinion of the learned judge of the trial court, quoted in appellant's brief, as follows:—

"The question as to whether or not the plaintiff has sufficient interest in the water distributed by it to its stockholders to represent them in this litigation affecting the title to water, is not free from difficulty. Defendant contends that title to water is in the owners of the soil, the actual users of the water, and that therefore these parties are the ones who have the right to maintain the action and to have their title to the water quieted, and that the plaintiff has no standing in court, and the case should be dismissed. The same question was

involved in suit No. 31,395, entitled 'Arroyo Ditch and Water Company *v.* Dorman et al.' Judge Trask there held that plaintiff could maintain the action to quiet title against the other cotenants, and in that action the rights of the Arroyo Ditch and Water Company and the defendants therein were adjudicated. This case was subsequently appealed to the supreme court, and a decision rendered therein sustaining the judgment of the lower court, with certain exceptions which are not material to the point involved. (137 Cal. 611, [70 Pac. 737].) The supreme court refused to pass upon the question as to whether or not the plaintiff was the owner of the water, but held that the plaintiff had sufficient interest to maintain the suit to quiet title. This decision is binding on all the parties to this suit except the defendants Baldwin and the interveners 'Curtin and Neighbours, who were not parties to that action, but as to them it is nevertheless an authority directly in point as to the right of this plaintiff to maintain this suit. Upon the authority of that case it will therefore be held that plaintiff, as against the defendant Baldwin, is the owner of the water in question, and entitled to maintain this action."

It is immaterial to this discussion whether or not some of the water taken from the stream by respondent is carried beyond the watershed. Appellant is limited in his right to the use of water upon his riparian land within the watershed of the stream. He may take his proper proportion of the water. The surplus must be returned to the channel of the river at the lower boundary line of his land. After he has thus used his legitimate part of the water he cannot object to its diversion to any beneficial use by the lower riparian owners and appropriators or their successors in interest.

The finding that appellant's lands are abundantly supplied with water for domestic use from wells is sustained by evidence. The testimony of witnesses Elliott and Unruh, though not as full upon this subject as could be desired, is sufficient to justify the finding. There was also evidence upon which the court's calculations with reference to the proportion of the water belonging to the different litigants were properly based.

Objection is made to the finding that defendant Baldwin has "without any right to do so, constructed a dam across a

part of said Old San Gabriel River on the said lands of said Baldwin." Obviously appellant being entitled to part of the water from the Old San Gabriel River, has the right to change its flow by means of a dam on his own property, but a reading of the entire finding makes its meaning plain. Added to and immediately following the words just quoted appear the following: "and has thereby diverted and converted to his use large quantities of the waters of said river which then belonged and now belong to the plaintiff," etc. Plainly, the intention was to characterize the dam not as an improper structure in itself, but as a means whereby defendant Baldwin procured an excessive quantity of water.

There was no error in permitting witness Tweedy to testify that if the three hundred inches of water had not been diverted by Mr. Baldwin and had come down to the plaintiff's dam, the latter could have made a beneficial use of it.

In view of our conclusions, there is no necessity for an examination of respondent's theory that the order of the lower court should be arbitrarily affirmed because of appellant's failure to serve the San Antonio Irrigating Ditch Company, a defaulting defendant, with notice of intention to move for a new trial.

It follows from the foregoing that the order denying the motion for a new trial should be sustained, and it is so ordered.

Shaw, J., Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.