[No. 1962]

# CHARLES DOHERTY, APPELLANT, *v.* GEORGE PRATT, ET AL., RESPONDENTS.

1. WATERS AND WATER COURSES—IRRIGATION—APPROPRIATION OF WATER—ECONOMICAL DIVERSION.

   A prior appropriator of water for irrigation did not employ a reasonable and economical method of diverting it where he permitted two-thirds of the water diverted to become lost in a swamp without any good excuse therefor.

2. WATERS AND WATER COURSES — APPROPRIATION — AMOUNT— ECONOMICAL DIVERSION.

   Where a prior appropriator of water for irrigation was entitled to a certain amount at the point where it entered his land, the amount to which he was entitled at the point of diversion was such as by a reasonable and economical method of diversion would supply him at his land with the amount to which he was there entitled.

3. WATERS AND WATER COURSES—APPROPRIATION— SUFFICIENCY.

   Where, before the adoption of the present statute, an appropriator of waters of a creek constructed dams in the creek within his lands and constructed ditches and irrigated his lands and raised crops by irrigation, and removed a portion of an existing dam above his lands so as to let a part of the water continue in its regular course down the creek, his acts were a sufficient appropriation.

4. WATERS AND WATER COURSES—APPROPRIATION—TRESPASS.

   Where an appropriator of water for irrigation removed a portion of a dam constructed upon public land by a prior appropriator in such a manner as to divert the entire stream, and by such removal allowed a portion of the stream to continue in its natural course, his act was not a trespass and did not render his appropriation invalid; the rights of the owners of the dam being commensurate with their rights to the water, and they having no right to divert the entire stream to the injury of a subsequent appropriator, especially where they did not economically use all the water appropriated.

5. WATERS AND WATER COURSES—APPROPRIATION—INTERFERENCE WITH DAM.

   A subsequent appropriator should not interfere with the dam of a prior appropriator unless such interference is reasonably necessary, and then it should not injure the rights of the prior appropriator.

APPEAL from the Fourth Judicial District Court of the State of Nevada, Elko County; *George S. Brown,* Judge.

Action by Charles Doherty against George Pratt and others. From a judgment for defendants, and an order denying a new trial, plaintiff appeals. **Reversed,** and new trial granted.

The facts sufficiently appear in the opinion.

*F. S. Gedney* and *W. A. Massey,* for Appellant.

*Chas. B. Henderson* and *J. W. Dorsey,* for Respondents.

By the Court, NORCROSS, J.:

This is an action for damages for alleged wrongful diversion of water and for an injunction. From a judgment and decree in favor of defendants, and from an order denying plaintiff's motion for a new trial, plaintiff has appealed.

Plaintiff alleged ownership of certain lands in township 41 north, ranges 54 and 55 east, in Elko County, and a prior appropriation in May, 1900, of a portion of the waters of Woods Creek, a tributary of the North Fork of the Humboldt River, for the irrigation thereof; that subsequent to such appropriation, and for nearly five years thereafter, he continued to irrigate about 170 acres of his said land with the water so appropriated, when the defendants wrongfully diverted the same.

Defendants denied the plaintiff's alleged appropriation, and denied, on information and belief, that any portion of plaintiff's lands in excess of about 100 acres are agricultural or have ever been irrigated or cultivated. Defendants further alleged ownership of certain lands in townships 41 and 42 north, and ranges 54 and 55 east, and their several appropriations of all the waters of said Woods Creek made prior to the year 1887 for the irrigations thereof. Defendants prayed for a decree that they were the owners and entitled to the first beneficial use of all the waters of said Woods Creek to the extent of 1,100 miner's inches; that their title thereto be quieted; that the plaintiff be adjudged to have no right or title to said waters, or to divert, appropriate, or use the same; and

for an injunction against the interference by the plaintiff with such rights.

Defendants offered no evidence, but submitted the case upon the evidence offered by the plaintiff. In support of plaintiff's case, the testimony of a number of witnesses was taken and a map was introduced in evidence depicting the lands of the parties to the action, and also the lands of others adjacent to said Woods Creek, and showing the location of the water courses and ditches relative to said lands. A copy of a portion of said map, reduced in size, accompanies and is made a part of this opinion for the better undertanding of the questions discussed. [See page 346.]

The decree entered in the action determined: "Third— That the plaintiff, Charles Doherty, has never appropriated, has never acquired, and is not the owner of, any right to use any of the waters of said Woods Creek; he has no title to or interest in the same or any part thereof, and his claim thereto, adverse to the persons entitled to said water, as aforesaid, or to any of them, is unfounded, invalid, and without any right whatever. Fourth—That the right to use eleven cubic feet per second of the waters of said Woods Creek, measured at a point west of the land of the said George W. Pratt where the ditch called the New South Ditch leaves said Pratt Creek, and also measured on what is called Pratt's Ditch just west of said Pratt's land at the point where the ditches fork, and the ownership of the right to divert a sufficient quantity of the waters of said Woods Creek at the point of location of the dam where said stream diverges from Pratt Creek to reach the point of measurement and supply the quantity of water above stated, to wit, eleven cubic feet per second, be and the same is hereby established, quieted, and confirmed in said defendant George W. Pratt, and in the said persons entitled to the estate of said Catherine West, deceased, in the matter of her estate, subject to the rights of the administrator of her estate pending the administration thereof, as against the adverse claims of said plaintiff; and that said plaintiff, and all persons

claiming under him, his attorneys, agents, servants, employees, and all those active through or for him, be and they are hereby perpetually restrained, prohibited, and enjoined from asserting said adverse claims, or any thereof, against the said persons entitled to the said estate of said Catherine West, in the matter of her estate, or against the administrator of her estate."

That the defendants were prior appropriators of a portion of the waters of Woods Creek is shown clearly by the evidence. We think, also, the amount of water decreed to defendants for actual irrigation when it reaches their lands is not, according to the evidence, excessive.

The points where the decree determines the water is to be measured, however, raise a serious question. In the findings of the court filed in the case, it was determined as a fact that it required at least 1,645 miner's inches of water at the dam where Pratt Creek leaves Woods Creek to deliver eleven cubic feet per second at the designated points of measurement. According to the findings, less than one-third of the water which passes the dam ever reaches the designated points of measurement. This immense proportionate loss of water is not accounted for by other appropriators on the creek using the same, for the amount, if any, used by Beassie, Hill, or Connell is not shown. It appears from the evidence that Pratt Creek runs through a large swamp of some 300 acres in extent, designated on the map and lying mainly on Hill's land, and that this swamp absorbs about two-thirds of the waters of Pratt Creek which enters it. No satisfactory showing appears from the evidence that this unusual waste of water could not be avoided. From the evidence in this case, it appears there is ample water in Woods Creek at the dam where the water is diverted by means of the dam into Pratt Creek to supply the requirements of both plaintiff and defendants were it not for the loss of water in the swamp mentioned.

We think, also, it appears from the evidence that the defendants' point of appropriation and diversion is at the dam where Pratt Creek intersects Woods Creek, and that

their prior right to waters of Woods Creek should be determined as at this point. Conceding that defendants have a prior right to so much of the waters of Woods Creek as will deliver eleven cubic feet per second on the west line of defendant Pratt's land, an amount of water should be decreed at the dam on Woods Creek as will supply such an amount of water under reasonable and economical methods of diversion. The rule as to reasonable and economical use of water applies as well to methods of diversion as it does to the application of the water to the land itself. The topography of the country and the character of the soil through which water is conveyed to the point of use must, of course, be taken into consideration in determining the amount of water to which an appropriator is entitled, but an appropriator has no right to run water into a swamp and cause the loss of two-thirds of a stream simply because he is following lines of least resistance. Such a method of diversion would not be an economical use of the water providing another reasonable method, under all the circumstances, could be devised to avoid such loss, even though it occasioned some additional expense to the appropriator. It is as much the province and duty of the trial court to determine whether the methods adopted for diversion are reasonable and economical under all the facts of the case as it is to determine the amount of water required by the appropriator at the place of use. There is in most cases a certain amount of loss from the point of diversion to the place or places of use, and, as we have before indicated, this loss will vary according to local conditions. Where, however, in the absence of any showing whatever justifying it, there appears to be a loss of two-thirds of such a large volume of water in conveying it only about three miles, reasonable and economical methods of diversion will not be deemed to have been shown.

We think the court erred in holding that the plaintiff had not performed acts essential to make a valid appropriation of unappropriated waters of Woods Creek. The evidence shows that the plaintiff constructed certain

dams in Woods Creek within his lands, plowed or dug certain ditches for the purpose of diverting water over portions of his land, did so divert the water, and raised valuable crops on the land so irrigated; that he removed a portion of the dam in Woods Creek which defendants had constructed to divert the water into Pratt Creek in order to let a portion of the water continue in its regular course down Woods Creek. These acts were done prior to the adoption of the statute now in force relative to making appropriations through means of applications through the office of the state engineer, and were sufficient to constitute a valid appropriation of surplus water, unless the contention of counsel for respondents can be sustained.

It is urged that plaintiff's appropriation was initiated in trespass, and that therefore no valid appropriation could be made.

The alleged trespass consists in the removal of a portion of the dam in Woods Creek, constructed by defendants, for the purpose of allowing a portion of the water to continue in its natural course down the creek. It would appear that the dam was constructed upon public land in a natural water course. Defendants' rights and interest in said dam were purely usufructuary. By means of a dam, an appropriator has a right to divert whatever amount of water he may apply to a beneficial use, but an appropriator has no valid right in appropriating a portion of a natural stream to build a dam that will divert the entire stream so as to successfully assert that a subsequent appropriator shall not interfere with such dam in order to make an appropriation of surplus waters. The rights of the owners of the dam are commensurate with their rights to the water. They can enjoin interference therewith only when such interference goes beyond the assertion of a valid right in another to locate the unappropriated waters.

A subsequent appropriator should not interfere with a dam of a prior appropriator unless such interference is reasonably necessary, and then such interference should

be such as not to injure the rights of the prior appropriator. It would be impossible to lay down any hard and fast rule as to when and when not a subsequent appropriator may interfere with a dam in a natural water course so as to avail himself of his right of appropriation, and each case must be determined on its own peculiar facts. The rights of the respective parties should never be lost sight of. The rights of both are limited by the rule of a reasonable and economical use, and, when a claim is asserted beyond this limitation for the purpose of restricting another's right, it cannot be sustained.

Weil on Water Rights in the Western States, page 480, says: "A dam is not improper *per se,* but becomes such when it is the means of taking an excess of water over the quantity to which the dam owner is entitled"—citing *Arroyo D. & W. Co.* v. *Baldwin,* 155 Cal. 280, 100 Pac. 874.

It appears from the evidence that the defendants had knowledge that plaintiff was taking water through their dam for nearly five years before complaint was made. Defendant Pratt, one of the joint owners of the dam, even assisted the plaintiff in the construction of his ditches, knowing that the water to be conducted therein must come from Woods Creek and past the dam. The contention that plaintiff's appropriation was void because initiated in trespass, we think, is without substantial merit. We think the evidence shows that plaintiff has performed acts constituting a valid appropriation of certain of the unappropriated waters of Woods Creek, and that his rights therein should have been determined.

A complete determination of the questions and issues involved in this case cannot be determined properly without a new trial, and it is therefore ordered that the judgment is reversed and a new trial granted.