[No. 14349.   Department Two.   January 30, 1918.]

THOMAS E. McFADDEN et al., Respondents, v. GEORGE
FERGUSON et al., Appellants, J. W. VANDERBILT
et al., Respondents.[1]

WATERS AND WATER COURSES—IRRIGATION. Where plaintiffs constructed dams in an irrigation canal to divert waters in the canal owned by them, and continuously diverted and adversely used the water for more than ten years upon their lands, they became the owners of the waters and of the ditch and right of way.

SAME—TITLE TO WATERS—ACTIONS. Defendants and cross-complainants in an action involving the right to irrigation waters seeking to bring in new parties must rely on the strength of their own title, not on the weakness of that of their adversaries.

SAME—CONVEYANCE OF WATERS—SEEPAGE WATERS. A conveyance of all the waters of a creek which the grantors then owned above a certain point, includes percolating or seepage waters therefrom above such point; and a reservation of such a portion of the waters as remain after adaption to the uses of the grantee reserves no seepage waters above the point in question, where the grantees used and adapted all of the waters granted.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered January 6, 1917, in favor of the plaintiffs and certain defendants, in an action to establish the right to the waters of a creek, and for an injunction, tried to the court. Affirmed.

Hovey & Hale, for appellants.
John H. McDaniels and E. E. Wager, for respondents.

HOLCOMB, J.—This action was originally commenced by plaintiffs against the defendants Ferguson to enjoin their interference with certain dams owned by the plaintiffs. It was alleged, that plaintiffs were the owners of certain lands, and that, for more than twenty-five years, a ditch had been constructed from near the north corner of plaintiffs' lands to

[1]Reported in 170 Pac. 365.

a distance of about one-half mile or more in a northerly direction, which ditch was first made for the purpose of protecting plaintiffs' lands from overflow during the high water season; that, about twenty-five years before the suit was commenced, an irrigation canal, known as the "Town ditch," was constructed a short distance north of plaintiffs' lands, and, after the construction of the same, the original ditch was used by plaintiffs as a means of conveying the waters owned by them in the Town ditch to their lands for the irrigation of the same, and that, during such time, it had been so exclusively used by plaintiffs; that, more than ten years prior to the commencement of this action, that ditch was further extended by plaintiffs over and upon their own lands; that the high flood waters from the adjacent hills, made by the melting of snow in the spring, had washed a deep channel in the ditch, so that the waters of plaintiffs from the Town ditch and the seepage could not be gotten onto plaintiffs' lands from the ditch without dams in the same for the purpose of raising the water level with the surface of plaintiffs' lands; that plaintiffs so constructed such dams and used the same continuously and uninterruptedly and without hindrance from twelve to fourteen years.

To plaintiffs' complaint, defendants filed an answer and cross-complaint, denying the material allegations and alleging that the ditch described in plaintiffs' complaint was a part of Park creek, and that the waters of Park creek were owned wholly by the defendants Ferguson and by the defendants Reed and the successors in interest of one J. H. McEwen, and asking that Vanderbilt and Reed be made parties to the action; further alleging that Vanderbilt had been using the waters of Park creek without right thereto.

Thereafter an answer and cross-complaint was filed on behalf of Reed, Donald, and the estate of James Watson, deceased, alleging among other things, that, by a decree in the superior court of Kittitas county, Washington, made in 1892, one J. H. McEwen and one Olmstead had been decreed all

the waters in Park creek, and that Reed had succeeded to the interests of Olmstead; that Donald, Ferguson, and the estate of Watson had acquired all the interests of McEwen in the adjudicated waters of Park creek, and that the ditch described in plaintiffs' complaint was a part of Park creek.

To the cross-complaint, plaintiffs replied, denying that the ditch described in their complaint was a part of Park creek or that any of the water from Park creek ever flowed therein, and alleging that the waters in the ditch described were the waters conveyed from the Town ditch by plaintiffs and such water as seeped therein from adjacent lands, all of which waters and ditches plaintiffs had used for more than ten years adversely.

Respondents Vanderbilt, upon being brought in, answered the cross-complaint, alleging, among other matters, that Park creek channel ran through a portion of their lands, and that the cross-complainants had sold and disposed of all their interests in the water of Park creek to one Sheldon, who had afterwards disposed of the same to one Sorenson, residing immediately east of the lands owned by the Vanderbilts; that the purchaser of those waters diverted the whole thereof from Park creek before they reached the lands of Vanderbilt, and that the only waters in Park creek which reached their lands were waters which seeped in between the point where Sorenson diverted the waters so purchased and the adjacent Vanderbilt lands. Upon the trial of the cause, after hearing the evidence, a decree was entered granting the plaintiffs and respondents Vanderbilt the relief prayed for by them, and from that judgment, only the defendants Ferguson and Donald have appealed.

In the year 1892, one McEwen and one Olmstead obtained a decree against the other settlers along the creek known as Park creek, awarding them all the waters of Park creek in equal shares. None of the respondents or their predecessors were parties to that action.

It is claimed by appellants that Park creek is a perennial stream and that their predecessors in interest, whose rights were early combined in McEwen and Donald's predecessor in interest, Olmstead, were the first settlers on Park creek; that it flowed through their lands, and the waters of the stream were all diverted and used by McEwen and Olmstead as far back as 1872, McEwen at that time being the owner of all of the lands now belonging to appellants Ferguson. The controversy involves the right of the plaintiffs and defendants Vanderbilt and wife to maintain permanent dams in the channel of Park creek. Suit was started June 5, 1915, as an injunction suit, by the plaintiffs against the defendant Ferguson, but by answer, cross-complaint, and intervention it became a suit by the defendants Ferguson and the interveners to establish a right to the waters of Park creek and to restrain the plaintiffs and defendants Vanderbilt from maintaining the dam in question.

Appellants contend that the court erred in rendering any judgment in favor of respondents, and in denying appellants a decree ordering the removal of the dams maintained in the alleged substituted channel of Park creek, and adjudicating respondents' rights in the waters of Park creek to be prior and superior to those of appellants.

Appellants contend, as matters of law: That an artificial channel may become substituted for the original channel (3 Farnham on Waters, pp. 2422, 2431 *et seq.*; 2 Farnham on Waters, p. 1492, and note); that the new channel is subject to the same law as to being kept clear (2 Kinney on Irrigation, pp. 1751 to 1753; 3 Farnham on Waters, p. 2125; 2 Farnham on Waters, p, 1837); that waste water and other accretions to the natural channel go to original appropriators in their order (2 Kinney on Irrigation, p. 1152); that one seeking to reclaim seepage water after it joined the natural channel must never have abandoned it and must show clearly his right to it (*La Jara Creamery & Live Stock Ass'n v. Hansen*, 35 Colo. 105, 83 Pac. 644). Respondents admit

the correctness of the law as argued by appellants, but contend that it has no bearing upon the facts and issues in the instant case. The evidence was resolved by the trial court in favor of respondents.

According to the evidence and theory of the respondents, the ditch which the appellants claim is a new channel of Park creek was a ditch originally constructed for the purpose of preventing the overflow of plaintiffs' lands by the spring freshets, and for conveying the water from the Town ditch after its construction to the lands of plaintiffs and one McCaustland. As late as 1904, this main ditch terminated on the lands of McCaustland and about 300 feet north of the land of respondents McFadden. The waters were brought from the terminus of this ditch by a small ditch onto the plaintiffs' ranch for irrigation purposes, and this ditch was then used only for the purpose of bringing the waters from the Town ditch to the lands of one Minton and plaintiffs; and the original ditch, alleged to be constructed by one Lewis, the predecessor of plaintiffs, was shown by respondents to have terminated 300 or 400 feet north of the north line of respondents McFadden's land. That ditch, which was claimed by appellants to have become the diverting or substituting stream of Park creek, was shown by respondents to have terminated before it reached the lands of plaintiffs. Lewis, the original occupant and user of plaintiffs' land and the water flowing in Park creek below the lands' of Vanderbilt, was shown by appellants to have constructed, about 1871 or 1872, a shallow and narrow ditch for the irrigation of his land now owned by plaintiffs. It is claimed by appellants that this ditch, constructed by Lewis in the early days before there was much irrigation in that locality, by reason of its shallowness, withdrew all the waters of Park creek from the place where it connected with that creek, and caused the waters of the creek to be diverted and flow through the ditch constructed by Lewis, and the action of the waters enlarged that ditch, and thereafter, during the course of

years and many floods, entirely changed the course of the creek so that the ditch constructed by Lewis became the main channel of Park creek.

Plaintiffs' evidence tended to show that the ditch constructed by Lewis had no outlet, but terminated upon his land. After the construction of this ditch, it appears that the channel of Park creek below the outlet of this ditch became filled up. In time it became necessary for the respondents and their grantors to provide for the return of the freshet water that came down through the ditch back to Park creek, which they did by digging another ditch connecting with their original ditch leading back into the channel of Park creek lower down below their lands. It is on the strength of that that defendants now demand the water and the removal of the dams maintained by the plaintiffs and respondents Vanderbilt. Even the evidence of appellants shows that there is some question as to whether or not the ditch constructed by Lewis entered upon his land, now owned by plaintiffs, or terminated before entering those lands. The man who testified to plowing furrows for the original ditch said the lay of the land was not well known. The evidence of respondents is that that ditch terminated 300 or 400 feet north of plaintiffs' north line. However that may be, the spring freshets coming down Park creek and entering this ditch constructed by Lewis thereafter overflowed the lands of plaintiffs and other lands below, and cut water courses and greatly damaged these lands, and thereafter and after 1904, according to respondents' evidence, a drainage ditch was built to carry these overflow waters from the ditch constructed by Lewis and enlarged by floods, to a connection with Park creek below the lands of plaintiffs. It is now claimed that this artificial channel constructed by Lewis and by plaintiffs became the main channel of Park creek, and that the original channel of Park creek to the north of plaintiffs' lands has been completely obliterated.

However, the uncontroverted evidence is that the original ditch constructed by Lewis terminated either upon his land or some 300 or 400 feet to the north thereof upon the land now owned by McCaustland; that thereafter the flood waters of the creek caused the channel to be deepened and enlarged so that it became in some places thirty feet wide and ten to fifteen feet deep, but overflowed the lower lands so that it was necessary to dispose of the flood waters thereof.

In 1907, appellants, together with other parties who had succeeded to the rights of Olmstead, by a quitclaim deed, conveyed to one Sheldon all of their interest in and to all the waters of Park creek, to be used upon any land upon which the grantee, Sheldon, might desire to use the same, east and north of the boundaries of his land, which were east and north of the boundaries of plaintiffs and respondents Vanderbilt's lands; but in that deed undertook to reserve the right to make such disposition as they "should see fit of any portion of such waters that may remain after adaption to the use granted the grantees, and after reaching points south and west of the boundaries described." These boundaries were the west and south boundaries of the north half of the north half of the northwest quarter of sec. 18, in township 17 north, range 20 E., W. M. Park creek flowed through the northeast quarter of this section. The adjoining land to the west was owned by defendants Reed, who have not appealed in this case. The course of Park creek was through the southwest quarter of section 13, now owned by Sorenson, which was the adjoining section west of Sheldon's section. McCaustland's quarter section was the adjoining quarter section west of Sorenson's. Plaintiffs, McFadden, own the land to the south of McCaustland's, and defendants Vanderbilt own the land north and west of McCaustland's. The flow of the waters of Park creek is from the northeast to the southwest.

It is evident from this conveyance of appellants and their predecessors to Sheldon that they conveyed all the waters of Park creek above the lands of respondents. Sheldon after-

wards conveyed the property in the waters conveyed to him by appellants and their predecessors to Sorenson, who owns the lands in section 13 east of the land of McCaustland, southeast of Vanderbilt's land. It is conceded that Sorenson, under his conveyance, diverts at points above all the lands in question, and uses, all the waters in Park creek down to his west and south boundary lines. If any waters return by seepage into the bed of Park creek from above they are the waste and seepage waters after use by Sorenson, and waste and seepage waters from a ditch known as the Cascade canal, which was constructed about fifteen years before the commencement of this suit.

From the evidence as accepted by the trial court, up to 1900, neither Park creek nor any other flowing stream ran through the lands of plaintiffs, but the waters with which they irrigated their lands were derived from Ellensburg Town ditch by means of the main ditch constructed by that project, and the conveyance thereof through the main ditch, which had been constructed as heretofore stated, originally terminated about 300 feet east and north of plaintiffs' lands on the lands of McCaustland, and by means of a small ditch thereafter constructed from the terminus of that ditch on through the plaintiffs' place. Up to 1900, according to this testimony adopted by the court, there was never any seepage water of any kind in this ditch claimed to be the diverting channel of Park creek, and no water except what was taken to plaintiffs' lands from the Town ditch, until after the Cascade canal was constructed. In the summer season, Park creek below Sorenson's land was dry. Since that time there has been seepage water from irrigation of plaintiffs' lands and the lands of Vanderbilt and others above and the intervening lands of McCaustland, all of which has been used on the lands of respondents. According to the evidence of respondents, the main ditch, originally constructed by Lewis and terminating on the lands of McCaustland about 300 feet north of the lands of McFadden, as late as 1904, as shown

by the evidence of former owners of the land, was the only ditch from which plaintiffs took their water, and by means of which they conveyed their water which they purchased and acquired from the Town ditch. It is shown that, after the ditch constructed through plaintiffs' lands had become so enlarged and deepened as to make it difficult to divert the waters therefrom, it was necessary for plaintiffs to put in the dams in question in order to raise the water to the surface of their land and so enable them to withdraw it upon their land. This they had done for much more than ten years prior to the commencement of this suit, and from this evidence, resolved in their favor, there is no question but that they were the owners of the waters in question and of the ditch and its right of way, and the legal propositions advanced by appellants have no force as to them.

As to respondents Vanderbilt, a more difficult question is presented. Appellants cannot rely upon the weakness of their title to the waters in question, but must rely upon the superiority of their own. By their deed they conveyed all the waters which they then owned coming down Park creek above respondents Vanderbilt's lands. It is true that, in that deed, they reserved the right to make such disposition as they "should see fit of any portion of the waters that may remain after adaption to the uses of the grantee and after reaching points south and west of the boundaries of the grantee." The boundaries of the grantee were one mile east of the boundaries of respondents Vanderbilt. But all they could convey of the waters of Park creek were the waters flowing therein. When they conveyed the waters flowing therein, they conveyed also the waters percolating therefrom which were used by their grantee. Their grantee afterwards conveyed all his right and title in and to the waters so conveyed to Sorenson, an owner and user adjoining the Vanderbilts. It is shown by respondents, and accepted by the trial court, that there was no spring water or sink water coming into the channels of Park creek below the western boundary

of Sorenson and the eastern boundary of the Vanderbilts, and above the western boundaries of any of the respondents' lands. Consequently there was no water coming into the channel which could be used by the Vanderbilts, except such as seeped from irrigation above. When appellants and their predecessors conveyed all this water, they conveyed all their right, title and interest therein, which included the percolated waters. Such waters as came in below or remained in the bed of the stream of Park creek as reserved in their conveyance could only be deemed to be such waters as came in naturally by springs intervening between the point of diversion of their grantee and their own lands, or by sink waters coming in from other sources, or the flow which had not been diverted and used by their grantee. Consequently they reserved no title in any waters, or the residuum thereof, granted to Sheldon or his grantees, except such as the grantees did not divert and use. They diverted and used all. It is immaterial, therefore, whether the Vanderbilts had acquired title to the waters below Sorenson's grant by prescription or not. Their dam is below the point of diversion and the use by Sorenson, and above any possible right that may have been acquired or reserved by appellants. The respondents have reclaimed, appropriated and beneficially used all these waters from whatever sources returning to the stream upon their lands. It is shown by the evidence that their lands cannot be irrigated except by means of the dams which they maintain, and that to enjoin the maintenance of such dams would mean to prevent them from irrigating and cultivating their lands. It must be deemed that appellants abandoned all right to any seepage water from the waters of Park creek upon and above the lands of any of the respondents when they conveyed the same by deed.

Upon the facts in the case, the decree of the lower court was right. Affirmed.

Ellis, C. J., Chadwick, Mount, and Morris, JJ., concur.