## UNITED STATES v. 813.96 ACRES OF LAND, MORE OR LESS, IN OUACHITA COUNTY, ARK., et al.

District Court, W. D. Arkansas, El Dorado Division.

June 23, 1942.

John E. Harris, Sp. Asst. to Atty. Gen., of Fort Smith, Ark., for petitioner.

O. E. Westfall and J. Bruce Streett, both of Camden, Ark., for defendants.

MILLER, District Judge.

On March 23, 1939, Dan W. Stott and wife executed several separate options for purchase of land by the United States of America. The land is situated in Ouachita County, Arkansas, and for the convenience of the petitioner the land was divided into seven tracts. Except for the legal description of the land and the designation of the tract numbers, the option agreements are identical.

It is provided in the option agreements, "the vendor by warranty or other proper deed as may be required by the United States and as hereinafter provided, agrees to convey to the United States a valid, indefeasible fee simple title to said land" subject to certain reservations and exceptions not now important. The United States was given six months in which to agree to purchase the land or accept the options and all were approved and accepted by the United States on August 17, 1939, within the six months' period allowed. The options further provide, "The United States shall thereafter have a reasonable time within which to secure an abstract or certificate of title and have the same examined."

All expenses for abstracts, surveys and title examinations were to be borne by the United States and all taxes, liens and encumbrances were to be paid by the vendor and in the event of failure to discharge any lien, the United States was authorized to discharge same and deduct such cost from the purchase price of the land. That, "upon the request of the Secretary of Agriculture or his authorized representative and without prior payment or tender of the purchase money, the vendor agrees to execute and deliver a good and sufficient warranty or other proper deed or deeds conveying to the United States the land."

The options were obtained by the United States under the provisions of Title 3 of the Bankhead-Jones Farm Tenant Act, approved July 22, 1937, 7 U.S.C.A. §§ 1010-1013, in connection with the Southern Arkansas Land Use Adjustment Project.

On August 14, 1941, the United States filed its petition for condemnation under the Farm Tenant Act, supra, and inter alia alleged, "that the apparent and presumptive alleged owners of the above described land executed and delivered options to your petitioner to convey said land to the United States at the prices stated therein, which said options were duly exercised and accepted by the United States."

The petition also alleged that from the public records of Ouachita county and other sources of information the United States was of the opinion that certain other persons may have or claim to have some right, title and interest in the land and service of summons was had on certain resident defendants and service of process was had by publication on certain nonresidents.

On the same date of the filing of the petition the Assistant Secretary of Agriculture filed a declaration of taking and caused to be deposited in the registry of the court the sum of $8,140.00, estimated by him as just compensation for the land.

On August 21, 1941, a judgment vesting title in the United States as of that date was entered by the court, and the cause of action was ordered to proceed in due course for the ascertainment of the right, title or interest of each and every defendant to the funds deposited in the registry of the court representing the value of the lands according to the declaration of taking and according to the amount stipulated in the option agreements.

Summons on the petition was issued December 11, 1941, and served by the Marshal upon the defendants, Dan W. Stott and wife, on December 16, 1941.

On April 20, 1942, the defendants, Stott and wife, filed their answer consisting of 9 paragraphs in which they allege:

1. Admit the authority of the Secretary of Agriculture to develop a program of land conservation and land utilization.

2. Deny that the lands described in the petition are necessary to the execution of such program.

3. Deny that it is advantageous or necessary in the interest of the United States to acquire title to the land described in the petition.

4. Allege that they are not the owners of a certain forty-acre tract of land described as Tract No. 227 in one of the option agreements.

5. Admit that they, as apparent and presumptive owners of the land described in the petition, executed and delivered certain options for purchase by the United States of the land therein described. Deny that the options were duly exercised and accepted by the United States, and allege that "the United States of America.

and the United States Department of Agriculture, and all departments and persons representing the government, failed to exercise said options within a reasonable time and having waited approximately two years and after repeated demand by these defendants for some action by the government without avail or response, the defendant, Dan W. Stott, in writing, did on January 7, 1941, revoke and terminate each and all of said option contracts."

6. Allege that they are without information or knowledge as to any interest in said land being owned by the numerous persons, firms and corporations named in the petition for condemnation, except the mineral interests which were specifically excepted from the option agreements.

7. That the amount deposited in the registry of the court, is "wholly inadequate and insufficient to cover and pay the true market value of the land sought to be taken and included in the declaration of taking and the decree of this court entered on August 21, 1941".

8. That the greater portion of the land described in the petition and included in the option agreements is not subject to erosion and is not necessary for any of the purposes alleged to exist by the petitioner; "that most of said land is heavily timbered and the reforestation of said land and the preservation of the natural resources thereof are and have been adequately protected by the private owners for many years".

9. That the fair market value of the lands on the date of the filing of the declaration of taking was in excess of $20,000.00.

The defendants prayed that the petition for condemnation be dismissed; that the decree of the court vesting title in the United States entered on August 21, 1941, be set aside and that the land be restored to them. In the alternative the defendants prayed that if their land was to be taken by the condemnation that they should be awarded a sum of money equal to the true market value of the land and the interest therein taken as of the date of taking, August 21, 1941.

On the same date the answer was filed, the petitioner, United States, filed its motion to strike paragraphs 2, 3, 5, 7, 8 and 9. The motion was argued orally before the court and at the conclusion of the argument the court sustained the motion and struck paragraphs 2, 3 and 8 of the defendant's answer, but took under consideration the motion as to paragraphs 5, 7 and 9, and requested counsel for the parties to file written briefs.

Counsel have filed written briefs in support of their respective contentions and the question now before the court is whether paragraphs 5, 7 and 9 of the answer of the defendants, Stott and wife, should be stricken.

The contention of the defendants is that the United States has failed to "duly" exercise and accept the options executed by them; that prior to January 7, 1941, repeated demands had been made by the defendants for the payment of the sums stipulated in the option agreements and that upon the failure of the United States to complete the purchase of said land and to pay therefor, they, in writing revoked and terminated each of the option agreements on that date; that the stipulated purchase price of $8,140.00 was much less than the market value of the land on the date of the filing of the petition for condemnation and the declaration of taking and of the decree of the court vesting title in the United States on August 21, 1941; that on the date the United States obtained title by the decree of the court, the fair market value of the land was in excess of $20,000.00.

The United States accepted each of the option agreements on August 17, 1939, within six months of the date of each of the options. The acceptance was evidenced by an endorsement on each of the options.

According to paragraph 5 of the answer, the defendants demanded from time to time that the United States take some action to consummate the purchase of the lands. The pleadings do not disclose why it was necessary for the United States to postpone action for nearly two years after it acquired title to the land under the decree of the court, nor why the issuance of summons was delayed from the date of the filing of the petition for condemnation on August 14, 1941, until December 11, 1941. The option agreements provide that the United States shall have after the date it accepts the options "a reasonable time within which to secure an abstract or certificate of title and have the same examined." In the meantime the vendor, the defendants, were required to pay the taxes on the land and were prevented from negotiating a sale of the same to any other person. The defendants were bound to execute and deliver a good and sufficient warranty or other proper deed any time

upon request of the Secretary of Agriculture. All expenses of acquiring and perfecting title were to be paid by the United States.

Did the United States act within a reasonable time after the acceptance by it of the option agreements? The declaration of taking was filed and title vested in the United States two years and four days after the acceptance of the option agreements, and two years, four months and twenty-eight days had elapsed after the option agreements had been executed by the defendants before action was taken by the government other than the endorsement on the options of their acceptance by the Secretary of Agriculture.

Should the defendants be required to accept the stipulated purchase price for the land or has the action of the United States in delaying action for the consummation of the sale released the defendants from the option agreements?

■ The action of the Secretary of Agriculture on August 17, 1939, in accepting the offer of the defendants, converted the option agreements into a contract of sale, and the United States and defendants are bound by the terms of the contract. Swift v. Erwin, 104 Ark. 459, 148 S.W. 267, Ann. Cas.1914C, 363; Wachovia Bank & Trust Co. et al. v. United States, 4 Cir., 98 F.2d 609.

The contract provides that in the event the United States determines, notwithstanding the prior exercise of the option, that the title to the land vested in defendants is unsatisfactory, that title may be acquired by condemnation with or without declaration of taking and that the vendor, defendants here, would cooperate with the United States in the prosecution of such proceedings and that the consideration set forth in the options should be the amount of the award to be decreed for all damages by reason of the taking of such property by judicial proceedings and the defendants specifically agreed that the option should constitute a stipulation to be filed in the judicial proceedings as final and binding evidence of the true value of said land and of the proper award to be made in such proceedings.

It is earnestly contended by the United States that the defendants are bound to accept the stipulated amount in full settlement of the value of the land. If the United States had proceeded within a reasonable time to obtain title or ascertain the condition of the title vested in defendants at the time the option agreements were accepted this contention would be valid.

■ The Supreme Court of the United States in Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 236, 84 L.Ed. 240, said: "Just compensation is value at the time of the taking. The Congress, in other situations, has adopted the time of taking as the date for determination of value. For the reason that compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment."

How can the owners of land, the value of which varies according to changes in economic conditions obtain just compensation for land, unless the value is determined as of the date of the taking? Here the date of taking was August 21, 1941. Any other rule would be contrary to the Fifth Amendment to the Constitution of the United States.

The case of Wachovia Bank & Trust Co. et al. v. United States, supra, is cited by the petitioner as an authority sustaining the failure of the United States to take action to consummate the sale. A careful reading of that case does not support the contention of the petitioner. On the other hand, it appears to support the contention of the defendants. The case clearly recognizes the rule that the petitioner was bound to take action within a reasonable period of time and if there was any unnecessary delay, the landowner would be relieved of his agreement to accept the stipulated sum as representing the value of the land.

The case of Coggeshall v. United States, 4 Cir., 95 F.2d 986, 989, is in point. In that case there was a delay from February 7, 1936, to December 23, 1936, in the payment of the stipulated amount due the landowners and which had been determined by a jury. The landowner objected to the delay in paying the money, notwithstanding he had participated in the proceedings and was a party thereto at the time the order fixing the value of the land in accordance with the verdict of the jury and the option was entered. The court said:

"Under the circumstances shown in the record we are of the opinion that while the government did not act with any great degree of diligence the delay was not such as to compel the judge below, in the exercise of his discretion, to set aside the or-

der. The statutory safeguards that have wisely been thrown around the expenditure of public funds are such as cause unavoidable delay in the making of such disbursements."

Here the defendants were not made parties until summons was served upon them on December 16, 1941, and according to the allegations of the answer have been at all times insisting that the United States complete the purchase of the land and pay them the agreed consideration.

It is true that laches is not imputable to the government, because the government can transact its business only through its agents and its agencies are numerous. The utmost vigilance is required to save the public from serious losses. United States v. Kirkpatrick, 9 Wheat. 720–735, 22 U.S. 720, 6 L.Ed. 199.

In this case the United States did not take any action preparatory to making payment for the land or to comply with the terms of the contract for a long period of time.

The Department of Agriculture is one of the largest executive branches of the government. It has thousands of employees and more are being added constantly. Inefficiency and confusion in the Department are not unknown, but a private citizen should not be injured by an unreasonable delay in the administration of the affairs of the department. A bureaucrat should not be permitted to arbitrarily and unnecessarily delay compliance with a contract and expect the law to approve. Honesty and fair dealing forbids such conduct on the part of a just government.

What constitutes "reasonable time" must be determined by the facts and circumstances of each case with particular reference to the means and ability of the persons involved. The United States possessed the means and ability to consummate this sale within a reasonable time.

The statute, 40 U.S.C.A. § 258a, specifically prohibits the payment of interest on an amount awarded as the value of property if such amount has been paid into the registry of the court. If these defendants are not permitted to show the market value of this land on the date of the taking they will be deprived of the use of the land and its increase in value, if any, from March 23, 1939, to August 21, 1941, and denied interest on the money which they agreed to accept in payment for the land. The

defendants had a right to expect payment in a reasonable time.

The motion of the United States to strike paragraphs 5, 7 and 9 from the answer contains no allegation that would excuse its delay. It is doubtful whether a valid excuse can be made. If so advised and the facts warrant the petitioner may file reply to answer and show that the defendants are responsible for the delay and that it had made bona fide efforts to consummate the sale.

The United States should not be allowed to speculate on property which it acquires either by purchase or condemnation from its citizens. Certainly no individual would be permitted such delay as shown here before taking steps to complete the purchase of land and to pay therefor unless the contract specifically granted such time. The time granted the government was "a reasonable time". It failed to act within such time and if the proof shows the defendants are not responsible for the delay, then they will be released from the agreement to sell the land at the price stipulated in the options and will be permitted to show the market value of the land as it existed on the date of the taking, August 21, 1941.

The motion to strike paragraphs 5, 7 and 9 from the answer of the defendants is denied.