NEPHI₀ HOWCROFT, Appellant, v. THE UNION & JORDAN IRRIGATION COMPANY, a Corporation, and OTHERS, Respondents.

No. 1389.   (71 Pac. 487.)

**Waters and Water Courses: Irrigation: Appropriation: Seepage: Burden of Proof.**

For more than forty years the waters of a stream to an amount exceeding the entire flow at the dry seasons had been appropriated for irrigation, such appropriations being below a flat tract of pervious soil across which the stream had cut several channels. The appropriators had during the dry seasons turned all the water into the deepest channel across this flat area to prevent seepage. Between this flat area and the ditches of the appropriators a number of springs existed along the bed of the stream, and at times when there was but little water flowing over this flat area there was a considerable stream flowing below it. Plaintiff attempted, by conducting the water through a ditch around or across this flat place, to save the water which seeped through the soil, and to appropriate it to irrigate his land, when defendants interfered with his works. *Held,* that plaintiff had the burden of showing that the water which he proposed to appropriate was lost to the defendants, and would be saved by his works, and, having failed to do this, he had no right to interfere with the stream.

(Decided February 2, 1903.)

Appeal from the Third District Court, Salt Lake County.— *Hon. W. C. Hall,* Judge.

Action to quiet title in the plaintiff to a certain quantity of the waters of Little Cottonwood creek. From a decree in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*Messrs. Frick & Edwards* for appellant.

The appellant contends that inasmuch as Little Cotton-wood creek was a public stream, the waters thereof were subject to appropriation for irrigation purposes under the laws of the State of Utah, and that prior appropriators in a stream are only entitled to such portion of the waters which reach to the land upon which the same is intended to be used by said appropriator. Raymond v. Winsette, 31 Pac. 537.

Even though a prior appropriator may have used all the waters of a stream, in the event he ceases to use any portion of the water for a period of seven years, his right ceases as to such portion, and said waters are open for appropriation by others. Section 1262, Rev. Stat. 1898.

It is a well settled rule of law that where one party without consent of the other unconditionally confounds his property with the property of the stranger, though they be of the same kind, he will lose the whole unless he can prove the quantity belonging to himself. Herriman Irrg. Co. v. Butterfield M. Co., 19 Utah 453; Canal & Ditch Co. v. Vaughan, 11 Cal. 143.

*Messrs. Bennett, Sutherland, Van Cott & Allison* for respondents.

### STATEMENT OF FACTS.

This is a controversy over the waters of Little Cotton-wood creek. The plaintiff seeks a decree adjudging him to be the owner of and entitled to the use of forty-two one-hundredths of that stream during the irrigating season of each and every year. It appears from the evidence, substantially, that the stream rises on the western slope of the Wasatch range of mountains, and flows in Salt Lake county in a westerly direction into the Jordan river; that the first appropriation of its waters was made by settlers, in 1848, for the

purposes of irrigation; that thereafter other appropriations were made for the same purposes, until, in 1856, five ditches had been constructed, and the entire stream to the extent of 185.31 cubic feet per second appropriated and diverted, nothing remaining except surplus water, which was also afterwards appropriated; that some distance below the mouth of Little Cottonwood canyon, out of which this stream flows, and about a mile above the headgates of the ditches, there is what in the record is called the "Horseshoe Bend," where the bed of the stream has been filled up with rocks, gravel, and dirt washed there in high water, making quite a large flat place; that in consequence of that flat country, so made, the stream at that place formed several channels, one of which is called in the record the "east" and another the "west" channel, which channels remain separate for about a distance of one mile; that the material deposited there and forming the beds of the channels is of a pervious condition, permitting the water to seep through under its surface; that, to save evaporation and prevent seepage, the appropriators each year, in time of low water, turned the several channels into one, sometimes into the east and sometimes into the west channel, until 1889, after which year the water was turned into the east, until 1900, when it was again turned into the west channel, the object being each year to turn the water into the largest and deepest channel; that the channels unite again below what is known as the "Last Chance Ditch," which ditch is above the five ditches mentioned; that on June 15, 1900, the plaintiff posted notices of his intention to appropriate and divert a certain portion of the water of the stream through the Last Chance ditch, his object being to divert the amount of water which seeped through beneath the surface because of the porous condition of the earth at that place; that, to determine the amount of such seepage which he intended to appropriate and divert through the Last Chance ditch, the plaintiff constructed two weirs, one above where the east and west channels separate, and the other below where they again unite,

and built dams to force the water over the weirs, the lower dam backing the water in the stream about two hundred feet to a depth of about four feet, and turning it over the weir into a place where some of it was wasted; that his purpose was by means of the weirs and dams to measure the water before and after that of the east channel was turned into the west, so as to determine the amount of such seepage that could be saved by turning all the water into the west channel; that on July 10, 1900, at 5:40 p. m., the plaintiff measured the stream at the lower weir, and found a flow of 18.062 cubic feet per second; that on July 11, 1900, at 5:50 p. m., after the water of the east channel had been turned into the west, by the defendants, the plaintiff made another measurement at the same weir, which showed a flow of 30.0923 cubic feet per second; that previous to the last measurement, during the morning of the same day, the defendants had turned a considerable quantity of water out of two ditches into the stream at a point some distance above the weir where the measurements were taken; that a number of springs exist along the bed of the stream between the lower weir and the headgates of the defendants' ditches; that before the plaintiff had taken all the measurements he desired the defendants tore out his dams; that he owns a certain amount of land, on which he intended to use the water for the purpose of irrigation; and that at times when there is little or no water at the Horseshoe bend, a considerable stream flows below the bend. There is also evidence tending to show that the seepage of the water would be as great in the Last Chance ditch, through which the plaintiff intended to take the water, as in the natural bed of the stream. At the trial the court entered a decree in favor of the defendants to the effect that they and other users of water in common with them, though not parties to the suit, were entitled to the use of all the water of the stream, and dismissed the action. This appeal is from the judgment.

BARTCH, J., having stated the facts as above, delivered the opinion of the court.

The appellant insists that the third finding of fact is erroneous, that the evidence is insufficient to justify it, and that it is not supported by the proof. The finding reads: "That said stream is fluctuating in character in the amount of water that it carries and furnishes in the different seasons of the year, and in different years; and that the said water reaches its lowest stage in January, and gradually increases in quantity until about July 1st to about the 22d, and after the latter date it gradually decreases. That in or prior to the year 1856 all the waters of said stream to the extent of 185.31 cubic feet per second were appropriated by the defendants and others, not including the plaintiff, and that ever since said time the said defendants and others, not including the plaintiff, have necessarily used the whole of the said waters of said stream, to the extent of the said 185.31 cubic feet of water per second, measured at the headgates of the respective ditches hereinafter named, for the purposes of irrigating agricultural lands in said Salt Lake county, through and by means of the following ditches, in the following proportions, to-wit: The Tanner ditch, two-ninths; the Walker ditch, one-ninth; the Richards ditch, one-ninth; the Cahon and Maxfield ditch, two and one-half ninths; the Union & Jordan ditch, two and one-half ninths. That during the whole of said time the said defendants, together with some others, owners and users of the said ditches, have exercised a common control over the said waters." Here it is found that in and prior to the year 1856 all the water of the stream, to the extent of 185.31 cubic feet per second, measured at defendants' headgates, was appropriated, and ever since used, for the purposes of irrigation by the defendants and others, not including the plaintiff, and that the water had been diverted by means of certain ditches and in the proportions specified. Without referring to the testimony in detail, it is clear, from an examination of it, that

there is an abundance of proof to support and justify this finding. This is so palpable as to leave no room for argument. The same thing may be said with equal force as to the second and third assignments of error, which relate to findings of fact Nos. 4 and 7. It is useless to call upon this court to disturb findings of fact where they are as strongly supported by the facts and circumstances disclosed by the proof as they are in this case. Nor, for like reasons, is the objection to the conclusions of law herein well taken.

Nor did the court err, under the facts and circumstances shown in evidence, in entering a decree and judgment absolute for the defendants. Before the appellant conceived, or, at all events, before he attempted to carry out, his scheme to save water, the water to the extent of 185.31 cubic feet per second—which is more than the quantity flowing in the stream during low water—had been appropriated and used; and each year, in low-water seasons, the several channels at the Horseshoe bend were, by the users, turned into one channel, the largest one, whether that was the east or the west channel, so as to augment the flow of the stream at the headgates of their ditches, and whatever increase in the flow was thereby caused was used by them during all these years. They were as much entitled, under their appropriations, to such increase, if any, of the water, as to any portion of the stream. It is a matter of common knowledge that in this arid region the mountain streams generally have what is known as an "underflow," that is, the water sinks and flows slowly through the rocks, gravel, and sand which form the bed of the stream. This subsurface flow in a known and well-defined channel constitutes a part of the stream, and is subject to the rights of appropriation the same as the surface flow. Kin. Irr., sec. 44. It is true the evidence in this case discloses the fact that at the Horseshoe bend the bed of the stream is pervious, permits the water to sink and cause a subterranean flow, but it is not shown that the same condition of the bed of the stream continues down to and beyond the defendants' head-

gates, and consequently that the subsurface flow does not again become a part of the surface flow before it reaches the headgates.   To show this, the burden was upon the plaintiff. He, however, not only failed to prove that such a physical condition existed in the bed of the stream as prevented the subsurface water from again mingling with the surface stream above the headgates, but, on the contrary, the evidence strongly tends to show that the underflow again rises, and forms a part of the surface stream, through springs which, according to the proof, exist along the bed of the stream below the point of the lower weir and above the headgates.

Under the physical conditions existing in this case, as disclosed by the evidence, the appellant acquired no possible interest in the water of the stream by reason of his notice of appropriation, or of his measurements, the difference in which was explained by the proof, relating to the turning into the stream of water, from two upper ditches after the first and before the second measurement was taken, and the fact that there was not as much seepage after the two channels were turned into one.   Nor had he acquired any right to obstruct the natural flow of the stream by the erection of dams and weirs therein.   In Platte Val. Irrigation Co. v. Buckers' Irrigation, Milling & Improvement Co., 25 Colo. 77, 53 Pac. 334—a case in some respects similar to the one at bar—it was said:   "There was no evidence tending to prove that its waters, after disappearance in the sands of the river bed, did or did not, by percolation or subterranean channels, find their way to the main stream.   Those acquainted with the arid region know that some of the most important and well-defined streams become almost, and sometimes entirely, dry, during a portion of the year, and that there is at all times what is known as the 'underflow.'   This is the subterranean volume of water which slowly finds its way through the sand and gravel constituting the beds of the streams which traverse the country adjacent to the mountains of this section, and to which rights by appropriation may attach.   With these

physical conditions present, it will be presumed that water flowing in a natural channel, which reaches the banks of a stream, and there disappears in the sands of the bed, augments the flow in the main stream by percolation, until the contrary is shown; and the burden of proof is on the party diverting such water to establish that it does not mingle with the main waters of the stream." The appellant has shown no right to interfere with the stream in question. The rights of prior appropriators to the use of water for agricultural purposes can not be permitted to be impaired by subsequent appropriators of the same water for the same purposes. Such rights must be jealously guarded under the law. We are clearly of the opinion that the findings of fact, conclusions of law, and the decree herein are warranted by the evidence. A separate discussion of the other points, raised by counsel for the appellant in their brief, is not deemed important. We find no reversible error in the record.

The judgment is affirmed, with costs.

BASKIN, C. J., and ROLAPP, District Judge, concur.