[No. 4686.]

The La Jara Creamery and Live Stock Association v. Hansen.

1.  Water Rights—Seepage—Appropriation—Statutory Construction.

The act of 1889 (Session Laws 1889, p. 215), relating to the appropriation of seepage water, providing that the person upon whose lands the seepage or spring waters first arise shall have the prior right thereto if the same can be used thereupon, does not apply to seepage waters which rise or come to the surface for the first time in the bed or channel of a natural stream. Such waters become part of the volume of such natural stream, inure to the benefit of the appropriators of the water of the stream in the numerical order of their appropriations, and the owner of the land through which the stream flows at the point where such waters rise therein has no priority of right thereto.

2.  Referees—Findings—Evidence.

Where a referee was appointed to hear evidence and to make findings and report, which he did, and the trial court approved the findings, such findings are not conclusive upon the appellate court in the same sense they would be if the trial judge had heard the witnesses testify and made findings therefrom.

3.  Water Rights—Seepage—Burden of Proof.

One who claims a prior right under Session Laws 1889, page 215, to appropriate water on the ground that it is seepage water diverted from a different stream and drainage and brought into the valley of the stream from which he seeks to

appropriate it and first rises on his land has the burden of proof to show that it is such water and the quantity thereof.

**4. Same—Evidence.**

Evidence that the bed of a stream is dry during most of the summer above claimant's lands while through its lands there is running water, and that the volume running through its lands is much larger since water has been diverted from a different stream and drainage and brought into the valley above claimant's lands and used for irrigation, but which fails to show how much of the water claimant collects in the bed of the stream comes from the seepage of water brought into the valley from a different stream and how much comes from other sources, and which fails to show how much of such seepage water first rises on claimant's lands, is insufficient to sustain a claim of priority of right to seepage water under Session Laws 1889, page 215.

*Appeal from the District Court of Conejos County: Hon. Charles C. Holbrook, Judge.*

Mr. Ira J. Bloomfield and Mr. D. E. Newcomb, Jr., for appellant.

Messrs. Rogers, Shafroth & Gregg, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

The parties are appropriators of water from the La Jara river, a natural stream in water district No. 21, the appellee being the senior appropriator, the head gate of whose ditch is lower down the stream than that of appellant. After these appropriations and decrees therefor were made divers other persons made appropriations of water from another natural stream in the same water district—Conejos river—which has no connection whatever with the La Jara. These subsequent appropriations were not made for the purpose of irrigating lands whose natural drainage is into the Conejos, but were diverted and carried in ditches over an intervening ridge and spread upon

the lands of the appropriators which lie in the natural watershed of the La Jara river, higher up that stream than the lands which belong to the parties to this proceeding. The appellant claims that some of the water thus applied passes by seepage from the lands thus irrigated and first rises again on lands belonging to or controlled by it, and some of it first rises on lands of other parties, while all of it ultimately reaches the La Jara channel.

In its statement of claim appellant alleges that it began to make use of these seepage waters in 1886 or 1887, and it claims, by virtue of the appropriation then made—the right to which, it is said, is recognized and confirmed by an act of the general assembly passed in 1889—so much of such seepage water as first rises upon lands which it owns or controls. In this proceeding, brought for the purpose of having its right thereto adjudicated, the matter was referred to a referee for findings and a report. He heard evidence, and his conclusion was that the evidence was so contradictory that he was unable to find therefrom that appellant had made such appropriation, and he recommended a decree accordingly. The district court affirmed these findings and rejected the claim.

1. Appellant's contention is that it has a right, recognized and confirmed by the general assembly, to make an appropriation of seepage water. The act relied upon is found in Session Laws of 1889, page 215, and reads:

"Sec. 1. That all ditches now constructed or hereafter to be constructed for the purpose of utilizing the waste, seepage or spring waters of the state shall be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the water of running streams: Provided, that the person upon whose lands the seep-

age or spring waters first arise shall have the prior right to such waters if capable of being used upon his lands.''

Whether and to what extent this act is constitutional we decline to say, for the case as made does not come within its provisions. It will be observed that the act purports to make applicable to appropriations of waste, seepage and spring waters of the state the same laws that govern appropriations of the water of running or natural streams, with the proviso that the person upon whose lands the seepage or spring waters first arise shall have the prior right thereto, if the same can be used thereupon. Whatever may be the rights of the owner of the overlying lands to intercept and use upon their surface the waters seeping or percolating beneath them and before they reach a natural stream, or the right of a landowner to use the waters of a spring that rises thereon, no such question is here involved. The appellant seeks to make an appropriation of what it calls seepage water after the same has reached the channel or bed of a natural stream. As we read the record, the appellant does not claim seepage water which first rises on its own lands at a point outside of the natural stream that flows through them, but waters which first rise in the bed of the stream itself, not before, but after, they actually reach the channel and form part of the volume of the stream. Nor does appellant claim that this seepage forms part of any water the right to the original or first use of which belongs to appellant as an appropriator, and has been once utilized and turned into the stream with an intent on his part again to use it, or that it is the water that naturally percolates through its own soil. It is water the original right to use which for irrigation belongs to and has been fully utilized by others and afterwards, by natural law, percolates therefrom and

through appellant's lands and reaches and first rises
in the bed of a stream running through the same,
which appellant claims the right to divert from the
stream itself as against prior appropriators there-
from.   We do not understand that this statute was
intended to apply to such appropriations.   If valid
at all, it is applicable only to appropriations of waste,
seepage and spring waters before they reach the
channel or bed of a natural stream, whether by nat-
ural surface flow, by percolation or by being artifi-
cially turned into the same.   After waste waters
reach the stream, unless there is then an intention by
the owner to reclaim them, they become part of its
volume, and inure to the benefit of the appropriators
of its waters, to be enjoyed in accordance with their
numerical priorities.   That this is the law when
waste water is turned into a natural stream, with
no intent of the owner to reclaim it, has been express-
ly decided.   There is no difference in principle be-
tween waste water thus added to a natural stream
and water which, by natural law, so finds its way into
such channel by percolation, surface or subterranean
flow.—*Storage Co. v. Reservoir Co.*, 25 Colo. 87-94;
Kinney on Irrigation, §§ 183, 259; *Clark et al. v. Ash-
ley et al.*, 34 Colo. 285; *McClelland v. Hendrie*, 3
Colo. App. 434.

2.  If, however, this were a case within the stat-
ute, and if it be conceded that the statute is
applicable and constitutional, appellant has failed
to sustain its claim on that theory.   As already said,
in discussing the first proposition, the water which
it claims as seepage water, as is admitted, comes orig-
inally from another stream in another watershed
having no connection with the La Jara river, and no
claim is made thereto by those who first diverted it.
After it is spread upon lands constituting a part of
the watershed of the La Jara all of it to which appel-

lant asserts any right comes naturally by seepage or percolation into the channel of that stream and there first rises. All of the water taken from the Conejos river is spread upon lands belonging to various persons, and by percolation reaches therefrom to lands of appellant and others, but it is only that portion which first rises upon lands owned or controlled by appellant, after it reaches the same in the bed of the river, that it claims by virtue of the appropriation here asserted.

The referee found, and the district court came to the same conclusion, that the evidence did not support this contention. Appellant, however, says that the preponderance is in its favor, and properly insists that it is our duty to weigh and sift this evidence, since the witnesses were not present before the district judge and the findings of the referee are not binding upon an appellate court in the sense they would be if the trial judge whose judgment is reviewed had seen the witnesses and heard them testify. That duty we have tried to perform, and have carefully read the evidence, and we cannot say that the district court erred in its findings. In the first place, the evidence is conflicting as to whether or not the water which appellant has collected in the stream itself by the construction of dams is seepage water proper; or if so, how much is natural seepage and how much is the Conejos river increase, or how much comes from the defined subterranean channel of the stream itself. It is a well known fact that some streams in this state, after running for less or greater distances on the surface, sink, and by a well defined subterranean channel flow for a number of miles and then come to the surface again.—*Platte Valley I. Co. v. Buckers I. Co.*, 25 Colo. 77.

The method which appellant employs to collect and divert the so-called seepage water is by driving

two parallel rows of piling in and across the channel
of the river the banks of which are five or six feet
high and filling in between the two rows so as to pre-
vent the water passing from below the artificial dam
thus constructed.  When the water is thus raised high
enough it is carried through ditches dug for the pur-
pose to the lands to be irrigated.  At best it is largely
a matter of opinion from what particular source
come the waters that reach the channel of a natural
stream.  Springs, surface drainage, percolation, seep-
age other than that naturally coming through adjoin-
ing lands, the subterraneous flow, may all contribute
to and form part of its visible volume.  The witnesses
here are not in accord on this point.  Some say that
the water claimed by appellant is seepage water
whose presence in the valley of the La Jara is due to
the diversion from the Conejos.  Others deny this.
The burden was on appellant not only to show this
fact but also the quantity.—*Howcroft v. Union etc.
Irr. Co.,* 25 Utah 311.  We find no estimate even of
the latter.  Appellant relies largely on the fact, to
which there is evidence, that the river bed of the La
Jara for many miles above its lands during most of
the summer season is dry, while through its lands
there is running water.  And the volume thereof, at
this point, is much larger than it was before the water
was brought over from the Conejos.  But how much
of the water that it collects at and by its dams in the
river bed comes from Conejos seepage and how much
of that first rises in its own lands, how much is
brought up from beneath the surface by driving of
the piles or how much of the surface channel is the
result of contributions thereto from other sources is
not shown.  We appreciate the difficulty of making
clear and satisfactory proof in such cases, and have
carefully searched the record to see if reliable and
definite data are there found on which some award

to appellant can be based. But we are unable to find such.

It is needless to say that some of the questions argued by counsel are of vast importance in this state, but we do not believe that the case, as made by the evidence, calls for an adjudication of the relative rights of appropriators of the waters of a natural stream and of owners of adjacent lands who seek to intercept on their own lands, and before the same reach the stream, waters that otherwise would come into the channel by percolation or seepage.

For the reasons given, the judgment should be affirmed.                                        *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.