## SIGURD CITY v. STATE et al.

No. 6303. Decided October 19, 1943. (142 P. 2d, 154)

280

*William A. Hilton,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., *E. J. Skeen,* of Salt Lake City, and *N. J. Bates* and *T. A. Hunt,* both of Richfield, for respondents.

WADE, Justice.

The town of Sigurd determined to obtain a supply of water for culinary and domestic uses. About 7½ miles southeast of Sigurd at the head of a canyon known as Rosses Creek Canyon there arise springs. It is the water from these springs which Sigurd decided would be the most suitable and practicable for its purposes. The waters from these springs flowed into Rosses Creek, and Rosses Creek is a natural tributary of a stream of water which runs through Kings Meadow Canyon, and is known by the name of either Kings Meadow Creek or Petersons Creek. In this canyon are located two ranches, one is known as the Nebeker Ranch and the other is known by the names of Bastion, Peterson, or State Ranch. Hereafter we shall call the latter ranch the Peterson Ranch, and the Kings Meadow Creek the Peterson Creek. On the Peterson Ranch are located numerous springs and flowing wells whose waters flow into

Peterson Creek and thence to the Nebeker Ranch which is lower than the Peterson Ranch. During summer these two ranches used all the waters in Peterson Creek for irrigation purposes.

On June 6th, 1938, Sigurd City filed with the State Engineer of Utah an application to appropriate for domestic and culinary purposes .5 C.F.S. of water from the Rosses Creek Springs. Thereafter it constructed a pipeline and a system for the distribution of the waters to its inhabitants running from these springs to Sigurd City.

The State Land Board of Utah and George W. Nebeker claimed ownership of the waters sought to be appropriated by Sigurd and protested to the State Engineer the granting of this application. The State Engineer found these waters were unappropriated from October 16 to June 15 of the succeeding year, which period of time covers the nonirrigation season, but were appropriated waters in the remaining months, and thereupon approved Sigurd's application, subject, however, to prior rights for the period commencing October 16 to June 15 of the succeeding year.

On June 15, 1939, Sigurd City commenced proceedings in the District Court against the State of Utah, George W. Nebeker and Emily Nebeker, his wife, to condemn whatever rights they had in the waters which were being diverted by Sigurd City at the head of Rosses Creek.

Sigurd City did not concede that the defendants owned any interest in the waters which it had taken. There was therefore injected in the case the question of title as well as the questions of value of the waters sought to be condemned and the damages sustained by the defendants. It was stipulated that the court should try the question of title and a jury the questions of value and damages, if any, should the court find title to be in the defendants. It was also stipulated that the jury should listen to all the evidence in the case but should, upon instruction from the court, decide only the questions of value and damages.

The evidence disclosed that George W. Nebeker was the assignee of a contract of sale from the State Land Board of the land and the appurtenant water rights of the Peterson Ranch.

Nebeker claimed all the waters in the Kings Meadow Canyon by virtue of continuous beneficial user for irrigation, domestic and culinary purposes, by himself and his predecessors in interest for a period extending over 50 years.

The State of Utah claimed the right to the use of waters in Kings Meadow Canyon by virtue of the decree in the Richland Irrigations Co. v. West View Irrigation Co., case No. 834, in the Fifth Judicial District of Utah, wherein certain amounts of water in Peterson Creek were decreed to the owner of the Peterson Ranch.

Sigurd conceded the claims of the defendants to the waters in Kings Meadow Canyon, but contended that the waters which it diverted were not part of the waters which flowed into Kings Meadow Canyon. Its contention was that the waters which it diverted on Rosses Springs never reached the ranches of the defendants and therefore did not belong to them. In its complaint Sigurd City admitted that the natural channel of the Rosses Creek united with the natural channel of Petersons Creek, but contended that during the major portion of time there is not sufficient water in Rosses Creek to reach the bed of Petersons Creek.

There was evidence to the effect that Rosses Creek stream was not large, but that its waters did unite with the waters of Petersons Creek, where it commingled with other tributaries of Petersons Creek and flowed down to the Peterson Ranch. There was also evidence that the amount of surface waters varied with the seasons. During hot, dry months the surface flow would disappear during the heat of the day and reappear sometime during the night or the early morning hours when the temperature had become cooler.

Both Sigurd City and defendants produced experts to testify to the topography and geological condition of the surrounding terrain. As is usually the case in expert testimony, these experts disagreed as to the conclusions to be drawn from certain physical phenomena. Suffice it to say that the expert for the defendants was of the opinion that the physical aspects of the canyons and the streams indicated a subsurface stream because, as he said, as Rosses Creek the "unconsolidated rock is deep and wide and large quantities of water go through it. He accounted for the fact that the waters seemed to appear and disappear at intervals in Rosses Creek as being due to the fact that the subsurface flow was forced to the surface when the valley fill became narrower. A further fact from which this expert drew his conclusion that the waters of Rosses Creek flowed in a subsurface channel was the presence of willows and rabbit brush at the bottom of Rosses Creek Canyon, since this kind of vegetation grows only where there is a comparatively high water table. From these physical facts he drew the conclusion that very little water would be lost enroute from Rosses Springs to the springs and wells on Peterson Ranch although some, of couse, would be lost by transpiration and evaporation. It followed therefore, from his reasoning, that when Sigurd diverted the water at Rosses Springs the flow to the Peterson Ranch would be reduced by the amount taken.

With this conclusion an expert hydrologist testifying for Sigurd disagreed. It was the opinion of the hydrologist that due to the fact that the bed of Rosses Creek was porous the water sank but did not become part of the subsurface flow and therefore very little, if any, of the water of Rosses Springs ever reached Peterson Ranch.

The trial court found that the defendants were the owners of the two ranches located in Kings Meadow Canyon together with all of the waters used in connection with said lands. It further found that the waters of Rosses Creek including the seeps and springs sought to be con-

demned, are tributary of and flow into Petersons Creek which creek is a tributary of and flows into Kings Meadow Creek. That at Kings Meadow Creek the defendants and their predecessors in interest have diverted and beneficially used, during certain seasons of each year for more than fifty years, all of the waters flowing in that creek, including the waters which came from Rosses Creek and Petersons Creek, whether flowing above or underneath the surface of the ground. The foregoing facts are the basis of defendants' water rights and there is no substantial dispute thereon and therefore they cannot be reversed. But the court in its findings of fact as well as in its conclusions of law and decree concluded from those facts that the defendants were the owners of all of the waters taken by plaintiff into its pipelines at Rosses Creek. Such conclusions, even though stated as findings of fact, are really conclusions of law, and to the extent that they are in conflict with the views herein expressed are not supported by the facts and are therefore set aside.

The court instructed the jury on this subject that the quantity of water "actually taken from defendants * * * must be fixed either at .19 or .24 of a cubic second foot or at some amount in between those two figures." In addition thereto the court submitted a special interrogatory on this subject which, with the Jury's answer is as follows:

"How much water in quantity was actually taken into plaintiff's pipeline as of June 15, 1939? (This must be either at .19 or .24 of a cubic second foot or at some amount in between those two figures.) Answer: .24."

As pointed out above there was a sharp conflict in the evidence as to how much, if any, of the waters of Rosses Creek which was taken by plaintiff into its pipelines would be lost by seepage and evaporation and would therefore never reach the defendants' ranches at Kings Meadow, had it not been taken by the plaintiff. The court made no written finding of fact on this question, and did not submit it to the jury. But at the trial after all the evidence

was in, in the presence of counsel, the court dictated into the record its findings of fact and on this subject said:

"* * * that there has been and is now a loss of water by way of evaporation and seepage to the ranch which at certain seasons of the year, runs as high as fifty per cent."

The evidence was sufficient to sustain a finding that all of the waters taken by plaintiff into its pipelines at Rosses Creek would have reached defendants' ranches, on the other hand, it was sufficient to justify a finding that as much as fifty per cent thereof at certain seasons of the year would be lost by seepage and evaporation and therefore could not reach the defendants' ranches. In view of the foregoing facts the court must have concluded that it made no difference whether all or only a part of the waters taken by plaintiff into its pipelines at Rosses Creek ever reached or had been used by the defendants on their ranches. This could only be justified on the theory that the defendants were the owners of all of the waters which plaintiff took into its pipelines even though not more than half of it would reach their lands and be beneficially used thereon.

This was a misconception of defendants' property rights in that water. They were not the owners of the body of water taken by the plaintiff into their pipelines, they were merely the owner of the right to use such waters as reached their lands and had been put to a beneficial use thereon. The water which was lost by seepage and evaporation before it got to their lands could not be beneficially used by them, and the plaintiff by taking such waters could not deprive the defendants of such waters.

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state." U. C. A. 1943, 100-1-3.

Although this section of the statute was enacted in 1907, which is since the time the defendants appropriated their waters, the doctrine therein announced has always been the

basis of the right to appropriate and use waters in this state. *Adams* v. *Portage I. R. & P. Co.*, 95 Utah 1, 72 P. 2d 648; *Whitmore* v. *Salt Lake City*, 89 Utah 387, 57 P. 2d 726; *Big Cottonwood Lower Canal Co.* v. *Cook*, 73 Utah 383, 274 P. 454.

The defendants were entitled to the use of all the water in Petersons Creek and its tributaries which reached their lands and had been appropriated and beneficially used thereon. To the extent that the plaintiff's taking of the waters of Rosses Creek deprived the defendants ■ of the use of water which would otherwise have been used upon their lands the plaintiff has taken the defendants' water. That is the only property right, which as between the parties to this action, the plaintiff seeks to condemn. If there are other waters which plaintiff has taken at Rosses Creek, which on account of seepage and evaporation have never been placed to a beneficial use by defendants, plaintiff may appropriate such water under its application to appropriate which it filed with the State Engineer. The defendants are thus entitled to full compensation for all of the waters to the use of which they were deprived by the plaintiff's taking of the waters at Rosses Creek. The quantity of water taken from the defendants by plaintiff is the difference between the volume and amount of water which would have actually reached the defendants' ranches had the plaintiff not taken the waters at Rosses Creek and the volume and amount of water which actually reaches the defendants' ranches since plaintiff has taken such waters. Thus defendants are entitled to compensation for the full volume and amount of water of which they are deprived by plaintiff's action, even though a part of such waters are not taken into plaintiff's pipelines. If there are waters which would have reached defendants' ranches had plaintiff not taken the waters at Rosses Creek but which now, owing to the decrease in the volume of the flow of water in Petersons Creek, are lost to the defendants by seepage or evaporation

or by other means, as a result of plaintiff's taking of the waters at Rosses Creek, the defendants are entitled to compensation for such waters. It is not necessary that such waters be actually taken into plaintiff's pipelines. All that is necessary is that the defendants be deprived of the use of such waters by some action of the plaintiff. See Hutchings on Water Rights in the West, p. 329; *Rasmussen* v. *Moroni Irr. Co.*, 56 Utah 140, 189 P. 572; *Whitmore* v. *Utah Fuel Co. et al.*, 26 Utah 488, 73 P. 764, and the same case on second appeal, 42 Utah 470, 131 P. 907.

True, these cases do not discuss the precise question here determined but do apply the rule here announced without discussion thereof. In *Adams* v. *Portage I., R. & P. Co.*, supra [95 Utah 1, 72 P. 2d 653], Mr. Justice Larson, referring to the right to use water, said:

"* * * this interest * * * is merely the right to have water, in quantity and quality to satisfy his appropriation, come to his point of diversion."

The court therefore erred in basing the defendants' damages on the quantity of water taken into plaintiff's pipelines at Rosses Creek and not on the quantity of water which the defendants would have placed to a beneficial use on their ranches and of which they were deprived by the plaintiff's taking of the water at Rosses Creek.

In determining the volume and quantity of water, the use of which the defendants were deprived of, the burden is on the plaintiff to show by clear and convincing evidence that the defendants were not deprived of the use of as much water as the plaintiff took into its pipelines ■ at Rosses Creek. *Howcroft* v. *Union & Jordan Irr. Co.*, 25 Utah 311, 71 P. 487; *Mountain Lake Mining Co.* v. *Midway Irr. Co.*, 47 Utah 346, 149 P. 929; *Silver King Consol. Mining Co.* v. *Sutton*, 85 Utah 297, 39 P. 2d 682; *Midway Irr. Co.* v. *Smoke Creek M. & T. Co.*, 8 Cir., 271 F. 157, affirmed 260 U. S. 596, 43 S. Ct. 215, 67 L. Ed. 423; *Bastian* v. *Nebeker*, 49 Utah 390, 163 P. 1092. The Bastian

case involved the same rights which are now owned by the defendants. Bastian claimed that he had developed waters which had not been appropriated by the defendants. The court held that he had failed to sustain his burden of proving by clear and convincing evidence that such waters were in fact developed waters. In so holding, the court of necessity held that had his evidence been sufficiently strong to show that the waters which Bastian claimed were in fact developed waters and had not been used by the defendants then Bastian would have been entitled to the use of such waters. This doctrine is also supported by the other cases cited. What is herein said is not intended to disturb the jury's award of damages to defendants' property not taken, but affected thereby.

This brings us to the assignment of errors relating to the instructions of the court on the question of damages. The court based the measure of damages upon the market value of the water for the purposes to which it was adapted as well as to the uses to which it had been put.

It is the theory of the plaintiff that if the facts warrant a finding that any of the water taken by it belonged to defendants, then under 15-7-4, R. S. U. 1933 (now 15-7-4, Utah Code Anno. 1943), the defendants are limited in their damages to the difference in the value of their lands with and without the water taken, and any incidental damage to the remaining water rights. The plaintiff bases its contention on the following sentence in the above section, to wit:

"In all condemnation proceedings the value of the land affected by the taking must be considered in connection with the water or water rights taken for the purpose of supplying the city or town or the inhabitants thereof with water."

We cannot subscribe to this viewpoint. This provision does not limit or define the measure of damages which is sustained by the owner of a water right taken by eminent domain proceedings. Rather it secures to the owner the

right to have the value of his land considered in connection with his water right. To hold otherwise would be to ignore Art. 1, Sec. 22 of the Constitution of Utah which provides that

"Private property shall not be taken or damaged for public use without *just compensation.*" (Italics ours.)

Mr. Justice Butler in the case of *Olson* v. *United States,* 292 U. S. 246, 54 S. Ct. 704, 708, 78 L. Ed. 1236, defined "just compensation" in eminent domain proceedings in a manner which we believe gives full regard to the principles and precepts of our form of government. He said in that case:

"Just compensation includes all elements ·of value that inhere in the property, but it does not exceed the market value fairly determined. The sum required to be paid the 'owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." Citing cases.

By this definition the owner of property is assured that his property cannot be taken from him for public purposes for any less sum than he would be able to obtain for it if he were willing to sell to a purchaser under no compulsion to buy.

In the case of *Whitmore* v. *Utah Fuel Co.,* 42 Utah 470, 131 P. 907, which involved the question of the measure of damages for the diversion and taking of water belonging to the plaintiff by the defendant, this court specifically repudiated the theory that the measure of damages is the difference in the value of the land with and without the water. In that case we held that where the facts were such that no market value was ascertainable then the value of the water can be determined

by the uses to which it had been put, and that the owner was entitled to be compensated for the full measure of his loss. Judge Straup in a concurring opinion expressed the view that we had unduly restricted the elements comprising the damages suffered by the owner. He expressed the view that the measure of damages should be the value of the water for the purposes to which it was adapted as well as the uses to which it had been put. In *Shurtleff* v. *Salt Lake City*, 96 Utah 21, 82 P. 2d 561, 564, this court in effect agreed with the views expressed by Justice Straup in the Whitmore v. Utah Fuel Co. case, supra. We said in the Shurtleff case:

"* * * if there is a demand on the market for those water rights, because those who make the demand think the rights can be put to more valuable use and are therefore willing to pay more for them, the owner is entitled to the benefit of that demand even though his own use of the rights may be limited."

We believe this to be just. Where an owner is deprived of his property rights in condemnation proceedings he should be compensated for the inherent value of his property in cases where there is no readily ascertainable market value. The fact that defendants had used the water for irrigation purposes does not limit the value of the water to them since 100-3-3, Utah Code Anno. 1943, provides that upon application to the State Engineer an appropriator may change the use of his water.

Plaintiff also assigned as error the refusal of the court to strike defendants' cost bill.

On April 3, 1940, the jury brought in a verdict in favor of defendants. On April 8, 1940, defendants served and filed their cost bill. Plaintiff moved to strike this bill on the ground, among others, that it was prematurely filed, entry of judgment on the verdict being stayed by the court.

On May 14, 1940, the court filed its findings of fact and conclusions of law. On May 20, 1940 (May 19 being a

Sunday), defendants served and filed a second cost bill which was the same as the first cost bill. Plaintiff moved to strike this cost bill on the same grounds alleged in its motion to strike the first cost bill.

On the 23rd day of May, 1940, the court signed the judgment, this was filed on the 27th day of May, 1940. The defendants served and filed a third cost bill on the 3rd day of June, 1940. Plaintiff moved to strike this cost bill on the ground that it was not served or filed within time.

That part of 104-44-14, Utah Code Anno. 1943, which is applicable reads as follows:

"The party in whose favor judgment is rendered and who claims his costs must deliver to the clerk, and serve a copy upon the adverse party, within five days after the verdict or notice of the decision of the court or referee, or, if the entry of the judgment on the verdict or decision is stayed, before such entry is made, a memorandum of the items of his costs and necessary disbursements in the action or proceeding * * *."

It is apparent from the fact, as shown above, that three different cost bills were filed at three different times that the defendants were uncertain under the facts and circumstances of this case when the time to file their cost bill began to run.

The parties in this case had agreed by stipulation that the court was to try the question of title and the jury the question of damages. The verdict of the jury was final as to the question of damages and was not merely special findings of fact, even though the court may have regarded it as advisory. Since the party in whose favor judgment is rendered may file his cost bill within five days after the verdict, it is apparent that this bill was not filed prematurely even though the court had stayed the entry of judgment. Any time after the verdict and before entry of judgment (where entry is stayed) is timely.

The second cost bill was served and filed after the court had signed and filed its findings of fact and conclusions of law. Ordinarily the findings of fact and conclusions of law constitute the decision of the court. See *Harris* v. *Chapman,* 1931, 51 Idaho 283, 5 P. 2d 733. The second cost bill having been filed after the decision of the court was made was not premature for the same reason that the first cost bill was timely.

The court filed its judgment on May 27, 1940. On June 3, 1940, defendants filed their third cost bill. This bill was for an amount somewhat less than the two previous cost bills. The record is silent as to when the clerk entered the judgment in the docket book. This court cannot determine therefore whether or not the filing of the third cost bill was timely because our statute clearly indicates that where the *entry* of judgment on the verdict or decision is stayed then the only time limit on the filing and serving of a cost bill is that it be done *before the. entry* of the judgment. In view of the silence of the record on this fact, this court will not as a matter of law say that the court erred in refusing to strike this cost bill. The court might well have considered all three cost bills as one.

The court did not err in refusing to strike the cost bill, nor does the plaintiff have any cause for complaint, especially in view of the fact that the court eventually taxed the costs at the lower figure.

Judgment reversed with instruction to proceed in accordance with the views expressed in this opinion. Costs to appellants.

WOLFE, C. J., and McDONOUGH, J., concur.

LARSON, Justice (concurring in part and dissenting in part).

I dissent. I agree with the prevailing opinion that the findings of the trial court are sustained by the evidence and should be upheld. I also agree that the instructions

given on the, measure of damages were correct, and that the motion to strike the cost bill was properly denied. But I dissent vehemently from that part of the opinion which places an interpretation on the findings of the trial court, which to me is contrary to the plain wording of five findings, two conclusions of law and two provisions of the judgment; and which reverses the trial court on an instruction relative to determining the amount of water taken by plaintiff. Mr. Justice WADE in the prevailing opinion sets out certain matters as findings of fact by the court which he says are the basis of defendants' water rights; and that such findings are sustained by evidence and cannot be reversed. He then declares certain other matters embraced in the court's findings are in reality conclusions of law, and are set aside as not sustained by the facts. The opinion does not point out what parts of the findings are thus set aside except to say those "in conflict with the views herein expressed." I am unable to brush these findings of fact aside as mere conclusions of law unsustained by the facts, especially when appellant concedes they are findings of fact, and *does not contend* that either the conclusions of law or the judgment are contrary to or are not supported by the findings of fact. Appellant does contend that the findings of fact as entered are not sustained by the evidence, but does not contend any of them are conclusions of law.

I here set out the essential parts of the findings of the court, also of the conclusions of law, and of the judgment The court found in finding No. 6, that:

"Defendants Nebeker, have contracted to purchase from defendant, State of Utah * * * [certain lands.] together with all water and ditch rights of every nature used in connection with said lands and that the waters of Ross's Creek including the springs and seeps heretofore mentioned [in findings 2, 3, and 4, which speak of the waters taken into plaintiff's pipeline] are part of the waters now and for more than 50 years last past *used* in connection with said lands, and that because of *said use* for more than 50 years by defendants and their predecessors in interest they have now become

and now *are entitled to the use of all said waters for irrigation, culinary and domestic purposes.* And that *they have* at all times prior to the taking of said water by the plaintiff as aforesaid *used said waters and all of them* from the first day of May to the 15th day of October of each and every year and that they are entitled to and have used one-half (½) of said waters as aforesaid from the 1st day of March until the 1st day of May of each and every year, which rights so belonging to the defendants are prior and superior to any and all rights of the plaintiff by virtue of said application to appropriate or otherwise." (Italics and brackets added.)

## In finding VII we read:

"That defendants are the owners of the right to use *all* said waters for agricultural, culinary and domestic purposes as heretofore set out and that the plaintiff has endeavored to purchase from the defendants their rights *in said springs and seeps* but that they have been unable to agree with plaintiff as to the value thereof." (Italics added.)

## In finding VIII the court said:

"That for the purpose of irrigating said lands this defendant and his predecessors went upon a stream known as Kings Meadow Canyon Creek and diverted the same and *all of the waters including the waters on the surface and underground* and used the same continuously thereafter and have, excepting for the acts of the plaintiff, *continued to use said waters* for the irrigation and cultivation of said lands, and for culinary domestic, and stock watering purposes. That there is *tributory to said Kings Meadow Canyon Creek a stream of water flowing above and beneath the ground known as Peterson Creek and that tributory to said Peterson Creek is the stream heretofore referred to* [water taken into plaintiff's pipeline] *including the springs and seeps,* as Ross's Creek *all of which water* during all of said time *have been used by defendants* and their predecessors. * * *" (Brackets and italics added.)

## Finding X reads:

"That *defendants and their predecessors appropriated all of the waters in and near Ross's Canyon* (except during the period of time as shown by the preceding paragraph) prior to the year 1900, and that said defendants and their predecessors *have continuously* adversely, openly and notoriously *used said waters* each and every year, and that said waters have been so used for irrigation, stock watering

and domestic purposes as one system, *and that the taking away of part of said waters from said system has resulted in a diminution of the remaining water rights."* (Italics added.)

We now turn to the conclusions of law, III and IV reading:

"That the defendants are the owners of a right to use *all of the waters of the springs and seeps of Ross's Creek* from May 1st to October 15th of each year and one-half of said waters from March 1st to May 1st of each year." (Italics added.)

"That *plaintiff has taken of water belonging to the defendants and diverted it into its pipe line* twenty-four hundredths (.24) of a cubic foot of water per second of the flow of Ross's Creek, and is so diverting the source." (Italics added.)

Let us now look at the judgment. In paragraphs 1, 2, and 3 we read:

"1—That the defendants are the owners of the right to the use of *all the water of Ross's Creek and springs and seeps tributary thereto* in Sevier County, Utah for the period from May 1st to October 15th of each year, and are the owners of the right to the use of one-half of said waters during the period from March 1st to May 1st of each year and that said rights are prior and superior to any right to said waters which is owned and held by the plaintiff.

"2—That the plaintiff is the owner of the *right to the use of the waters of said Ross's Creek together with tributary springs and seeps* for the period from October 16th to but not including March 1st of each year and is the owner of one-half of said water during the period from March 1st to May 1st of each year.

"3—That the *plaintiff take and acquire by this condemnation proceeding* in fee .24 cubic foot per second of the waters rising and *flowing from said Ross's Creek and tributary springs and seeps and belonging to defendants as set forth in paragraph one above,* and that the plaintiff pay as compensation to the defendants within thirty days from date of entry hereof the amounts ascertained by said verdict as follows: Flow of water taken—$125.00, damage to other water not taken—$550.00, together with interest on both sums at the rate of six percent per annum from the 15th day of July 1939, and together with costs of this proceeding." (Italics added.)

And in the instructions to the jury, the court charged the jury that defendants were the owners of the water taken by plaintiff into its pipeline.

In its construction of the court's findings, the prevailing opinion resorts to statements of the court delivered orally in announcing its general conclusion and decision regarding the ownership of the water, before submitting the question of damages to the jury. It has been established that the findings and judgment as entered control and that the oral pronouncements are not to be considered thereafter. *Stevens & Wallace* v. *Golden Porphyry Mines Co.*, 81 Utah 414, 18 P. 2d 903; *Victor Gold & Silver Min. Co.* v. *National Bank,* 18 Utah 87, 55 P. 72, 72 Am. St. Rep. 767; *Grand Central Min. Co.* v. *Mammoth Min. Co.*, 29 Utah 490, 83 P. 648; *Utah Com'l & Sav. Bank* v. *Fox,* 44 Utah 323, 140 P. 660; *Miller* v. *Marks,* 46 Utah 257, 148 P. 412; *Headlund* v. *Daniels,* 50 Utah 381, 167 P. 1170.

If the court was right in finding that the water of Rosses Creek was the property of the Nebekers, then he was certainly right in assuming in instructing the jury that such water as plaintiff took from Rosses Springs was Nebeker's water. Yet the opinion says the court was right in making the finding, and wrong in assuming the finding to be correct.

Under the law, what is the extent of Nebekers' rights in the waters of Rosses Springs? As indicated in the prevailing opinion, the waters here involved are waters of one of the tributaries of Peterson's Creek, sometimes known as Kings Meadow Canyon. These waters were the subject of litigation in *Bastian* v. *Nebeker,* 49 Utah 390, 163 P. 1092. We quote from that opinion:

"Mr. Nebeker, immediately on taking possession of the land [about 1877] covered by the homestead, diverted thereon all of the water flowing in King's Meadows Canyon that was not lost by seepage and evaporation before it reached that point, and continuously * * * used it for irrigating his land and for culinary purposes."

Again we quote:

"In March, 1900, a decree was entered in the district court * * * wherein fifteen-sixteenths of all the water of King's Meadows Creek * * * were awarded to Nebeker * * * and one-sixteenth to Anderson."

Further, on in that opinion, the court says:

"The evidence shows that plaintiff's trench or drain ditch situate just west of, and in close proximity to the natural water channel where the same passes through King's Meadows intercepts and carries to plaintiff's reservoir a substantial flow of seepage water. The seepage water is a tributary to the main stream used by the Nebekers, and the court erred in not awarding and decreeing it to them."

The land and water rights which Bastian owned in that suit was part of the early Nebeker land and water, and is called in this action the State Ranch, and is again the property of Nebeker, so he now has all the original Nebeker rights and holdings. Bear in mind that this is not a case where one makes an appropriation to *divert part* of the waters of a natural stream at a specified place. Such appropriator has no interest in the stream above or below, as long as he gets the limit of his appropriation at his point of diversion. This is a case where Nebeker appropriated the entire flow of the stream and all its tributaries at and above the meadows. The natural channels therefore from the source to the meadows were part and parcel of his ditches and conveying channels, and the waters thereof were no longer subject to appropriation as public water flowing in a natural channel, unless he failed to put them to a beneficial use. *Malad Val. Irrig. Co.* v. *Campbell,* 2 Idaho 411, 18 P. 52; *Strickler* v. *Colorado Springs,* 16 Colo. 61, 26 P. 313, 25 Am. St. Rep. 245; *Bolter* v. *Garrett,* 44 Or. 304, 75 P. 142, 143. He has an interest in the stream from his point of diversion to its source. *Platte Valley Irr. Co.* v. *Buckers I., M. & I. Co.,* 25 Colo. 77, 53 P. 334; *Howcroft* v. *Union,*

*etc., Co.,* 25 Utah 311, 71 P. 487; *Midway Irrig. Co.* v. *Snake Creek M. & T. Co.,* 8 Cir., 271 F. 157, affirmed 260 U. S. 596, 43 S. Ct. 215, 67 L. Ed. 423; *Stookey* v. *Green,* 53 Utah 311, 178 P. 586. As such sole appropriator of all the waters of the creek from its sources to the meadow, he was entitled to all the waters, although seeping or flowing underground, which were part of and tributary to the stream flowing in the natural channel above the ground. *Alamosa, etc., Co.* v. *Nelson,* 42 Colo. 140, 93 P. 1112; *Huffner* v. *Sawday,* 153 Cal. 86, 94 P. 424; *Morris* v. *Bean, C. C.,* 146 F. 423; Id., 9 Cir., 159 F. 651, affirmed 221 U. S. 485, 31 S. Ct. 703, 55 L. Ed. 821. And any interference with any of such rights was an interference with and a taking of his waters. *Whitmore* v. *Utah Fuel Co.,* 26 Utah 488, 73 P. 764; *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597, 57 P. 585; *McClellan* v. *Hurdle,* 3 Colo. App. 430, 33 P. 280; *Vineland Irrig. Dist.* v. *Azusa Co.,* 126 Cal. 486, 58 P. 1057, 46 L. R. A. 820; Kinney on Irrigation, 2d Ed., pars. 1161 and 802.

This is not a water rights action but a proceeding in condemnation. Sigurd seeks to condemn the rights of defendants in and to the waters of Rosses Springs. True, plaintiff contends that defendants do not own the waters of Rosses Springs. Plaintiff admits Rosses Springs are tributary of Peterson Creek, sometimes called Kings Meadow Canyon, but argue that at times the flow of the springs and seeps do not reach the Nebeker land, due to seepage and evaporation. There was evidence both ways on this question, but the trial court made findings—which are not assailed, and are approved by the prevailing opinion—as follows:

"That the waters of Ross's Creek, including the spring and seeps heretofore mentioned are part of the waters now and for more than 50 years last past used in connection with said lands * * * that because of said use * * * defendants * * * have become and now are entitled to the use of all of said waters." (Finding VI)

As shown above, in Finding VIII the court found that defendants' predecessors

"diverted all of the waters * * * on the surface and underground * * * including the springs and seeps known as Ross's Creek, all of which water * * * have been used by defendants." In Findings IX and X, quoted supra, the court again finds that defendants and their predecessors had appropriated "all of the waters in and near Ross's Canyon * * * prior to 1900, and continuously * * * used the same."

I am unable to discover how in the light of the findings, conclusions, the judgment and the instructions to the jury, unassailed and unquestioned by the prevailing opinion, this court can reach the conclusion therein set forth. Under such findings the trial court could not do otherwise than submit the question of damages to the jury on the basis it did use. This is a proceeding in condemnation. Once the court had found and determined that defendants owned all the waters flowing from the springs and seeps in Rosses Canyon, it must of necessity submit to the jury the question of damages on the theory that all the water taken into plaintiff's pipeline was water of defendants, and should be compensated for in this condemnation proceeding.

MOFFAT, Justice (dissenting and concurring).

I concur in the dissenting and concurring opinion of Mr. Justice LARSON, and I dissent specifically to the language in Mr. Justice WADE'S opinion, as follows: "They were not the owners of the body of water taken by the plaintiff into their pipelines, they were merely the owner of the right to use such waters as reached their lands and had been put to a beneficial use thereon. The water which was lost by seepage and evaporation before it got to their lands could not be beneficially used by them, and the plaintiff by taking such waters could not deprive the defendants of such waters."