Wallace R. Cotton, J.
In the instant proceeding, the claimant, Columbia University, seeks to increase the prevailing rate of 6% interest paid on condemnation awards to 8%, on the theory that since the date of vesting (October 1, 1971), *558 conditions in the "money” market were such that the prevailing rate of 6% interest is inadequate and thus does not conform to the constitutional requirement of "just compensation”.
"It is settled doctrine that a condemnee is constitutionally entitled to 'some sum in addition to the bare value of the property at the date of taking for the delay in making payment, so that the compensation may be just’ (Matter of City of New York [Bronx Riv. Parkway], 284 NY 48, 54, affd 313 US 540). And since the ascertainment of just compensation is a judicial question (Matter of City of New York, 190 NY 350, 353; Monongahela Nav. Co. v United States, 148 US 312, 327; United States v Commodities Corp., 339 US 121, 124, n 3; and see NY Const, Art I, § 7, subd [b], the specific provision in section 3-a of the General Municipal Law does not foreclose consideration of claimants’ contentions as to what constitutes just compensation.” (Matter of City of New York [Maxwell], 15 AD2d 153, 179.)
Examination of Black’s Law Dictionary, Fourth Edition, relating to "just compensation” reveals: As regards property taken for public use, the term is comprehensive and includes all elements. Jacobs v US, Ala, 290 US 13, 54 S Ct 26, 78 L Ed 142, 96 ALR 1; Metropolitan Water Dist. of Southern California v Adams, 16 Cal 2d 676, 107 P2d 618, 621. But does not exceed market value. Sigurd City v State, 105 Utah 278, 142 P2d 154, 158; U. S. v Waterhouse, CCA Hawaii, 132 F2d 699, 703. It means a settlement which leaves one no poorer or richer than he was before the property was taken. U.S. ex rel. Tennessee Valley Authority v Indian Creek Marble Co., DC Tenn, 40 F Supp 811, 818, 819; adequate compensation, State v Hale, Tex Civ App 96 SW2d 135, 141; In re Board of Sup’rs of Chenango County, Co Ct, 6 NYS2d 732, 739; fair market value, Cameron Development Co. v United States, CCA Fla, 145 F2d 209, 210, U.S. ex rel. and for Use of Tennessee Valley Authority v Davis, DC Tenn, 41 F Supp 595, 597, 598; United States v Certain Parcels of Land in City of Baltimore, Parcel No. 12, DC Md, 43 F Supp 687, 689. Full and perfect equivalent of the property taken. Housing Authority of Shreveport v Green, 200 La 463, 8 So2d 295, 298; U. S. v 2.4 Acres of Land, More or Less, in Lake County, Ill., CCA Ill, 138 F2d 295, 297. It is the value of property taken at time of taking. United States v 813.96 Acres of Land in Ouachita County, Ark., DC Ark, 45 F Supp 535, 538; Danforth v U.S. Mo, 308 US 271, 60 *559 S Ct 231, 236, 84 L Ed 240; plus compensation for delay in payment. Kieselbach v Commissioner of Internal Revenue, 317 US 399, 63 S Ct 303, 305, 37 L Ed, 358; or consequential damages to the owner. In re Board of Water Supply of City of New York, 277 NY 452, 14 NE2d 789; or value of use of property from date of taking possession to date of judgment if possession is taken by condemnor prior to judgment. Los Angeles County Flood Control Dist. v Hansen, 48 Cal App 2d 314, 119 P2d 734, 735. It requires that the owner be put in as good position pecuniarily as he would otherwise have been. Kansas City Southern Ry. Co. v Commissioner of Internal Revenue, CCA8, 52 F2d 372, 379; In re Gratiot Ave., City of Detroit, 294 Mich 569, 293 NW 755, 757; U.S. ex rel. and for Use of Tennessee Valley Authority v Powelson, CCA4, 118 F2d 79, 87.
From the cases cited above, it is clear that our courts have consistently held that in eminent domain proceedings a claimant is entitled to receive "just compensation” for the property taken and that "just compensation” includes an amount for interest on the award and that the amount of interest to be paid is a matter for judicial interpretation to be guided by but not bound to the applicable statutes and surrounding circumstances. It is my interpretation that "just compensation” means "fair” and does not mean the maximum possible return on the fund if invested in some speculative, specific, or unusual manner.
In accordance with the procedure suggested by the late Mr. Justice Geller in Matter of City of New York (Mun Bldg) (57 Misc 2d 156, affd sub nom., Matter of City of New York (Manhattan Civic Center Area), 32 AD2d 530, affd 27 NY2d 518), a separate hearing was held and testimony taken with regard to the conditions of the money market, as well as the mortgage and securities market at the date of vesting (October 1, 1971) and thereafter.
Claimant, Columbia University, and^the City of New York each produced expert witnesses affiliated with two of our largest and most respected financial institutions as well as economists of equal expertise and repute. The record contains substantial testimony relating to the conditions in the "money” market as well as the mortgage and securities market from the date of vesting and for several years thereafter.
In addition, the court has taken judicial notice of the published reports of the "money” market as it relates to the *560 prime rate since the taking of the testimony to the date of this opinion. The vicissitudes of the highly volatile money and securities markets are best demonstrated by the fact that the "prime rate” which is the interest rate paid for loans by the most financially reputable borrowers has fluctuated from a high of 12%% to 1V2% over the past four months, more than a one-third break in price on the "down side.” The testimony also demonstrated that during the pendency of this proceeding our economy was in what was referred to as an inflationary rampage. Despite the double-digit inflation with its high prices, the stock market however, was depressed and holders of equities over the period in question suffered substantial losses. Seemingly as the equity market sank the price of "money” as represented by interest rates to be paid by borrowers from 1973 until the latter part of 1974 rose to a high of 12%% at which point the upward trend reversed and steadily declined to the present 1V2% rate.
While it is true that during the period in question the money market, the mortgage market and bond market were experiencing wide price fluctuations on the "up side”, the interest rate paid by savings banks on regular accounts remained constant at 5%%. Moreover, it was conceded by both the claimant’s expert and City’s expert that from the date of vesting and until 1973, a period of two years, the rate of 6% interest paid on condemnation awards compared favorably with all other comparable economic indicators.
No real evidence was offered as to what Columbia University did with that portion of the fund in question which they actually received as an advance payment an amount in excess of one million dollars. From the proof offered, a purchase of long-term bonds on vesting date would have resulted in slightly less than 6% return on investment; short-term government paper with constant roll-overs concededly could have benefited from the spiralling higher interest rates which began two years after the vesting. On the other hand, an equity investment in so-called gilt-edge securities would have resulted in substantial loss to the principal. This of course is all conjecture and speculative.
In the case primarily relied upon by claimant (Matter of City of New York [Mun Bldg], supra), the court took testimony relating to all of the economic indicators and then predicated its decision on a constitutional issue, that as the United States government, and New York State government were paying *561 6% interest on condemnation awards, that the statutory 4% to be paid on similar awards of the City of New York pursuant to its applicable statute was arbitrary and constituted unequal protection under the Federal and State Constitutions. No such issue is presented by the case at bar. The Federal government, State and city, are all paying a uniform rate of 6% interest on condemnation awards.
The only issue then before this court is whether or not the statutory rate of 6% interest is "just” and after reviewing all of the evidence I am of the opinion that the statutory rate of 6% interest presently being paid on condemnation awards is "fair” under all the circumstances and as such is within the ambit of "just compensation” and should not be changed.
Accordingly, the application is denied.